UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| MICHEL TOLIVER, | REPORT |
| Plaintiff, | and |
| v. | RECOMMENDATION |
| | --------------------------- |
| JOHN C. COLVIN, Deputy Superintendent for | DECISION |
| Security, | and |
| SUPERINTENDENT of FIVE POINTS | ORDER |
| CORR. FACILITY, | |
| CORRECTION OFFICER BROWN, Five Points, | 12-CV-00227A(F) |
| R. SHIELOS, Correction Sergeant Five Points, | |
| JOHN DOE, Correction Sergeant Five Points, | |
| WALAWENDER, Correction Sergeant Five Points, | |
| BRIAN FISCHER, Commissioner of New York State | |
| Dep't of Corrections and Community Supervision, and | |
| DIRECTOR OF MOVEMENT AND CONTROL/ | |
| INMATE HOUSING, Albany, | |

                                    Defendants.
_____

APPEARANCES:        MICHEL TOLIVER, *Pro Se*
                    10-A-4565
                    Five Points Correctional Facility
                    Box 119
                    Romulus, New York  14541

                    ERIC T. SCHNEIDERMAN
                    ATTORNEY GENERAL, STATE OF NEW YORK
                    Attorney for Defendants
                    DAVID J. SLEIGHT
                    Assistant Attorney General, of Counsel
                    Main Place Tower
                    Suite 300A
                    350 Main Street
                    Buffalo, New York  14202

## JURISDICTION

This case was referred to the undersigned on May 21, 2013, by Honorable

Richard J. Arcara, for all pretrial matters including report and recommendation on

dispositive motions.  The matter is presently before the court on Plaintiff's motions

seeking a temporary restraining order (Docs. Nos. 11 and 12), respectively filed

February 26 and 28, 2013, sanctions (Doc. No. 14), filed March 14, 2013, an injunction

(Doc. No. 17), filed April 12, 2013, leave to file a further amended complaint (Doc. No.

22), filed June 7, 2013, and to compel Defendants to answer the amended complaint

(Doc. No. 23), filed June 7, 2013.[1]

## **BACKGROUND**

Plaintiff Michel Toliver ("Plaintiff" or "Toliver"), proceeding *pro se*, commenced

this civil rights action pursuant to 42 U.S.C. § 1983 on March 21, 2012, while

incarcerated in Shawangunk Correctional Facility ("Shawangunk") in Wallkill, New York,

alleging Defendants, all employees of New York State Department of Corrections and

Community Supervision ("DOCCS"), violated his rights under the Eighth and Fourteenth

Amendments by failing to protect him from repeated assaults while housed in Five

Points Correctional Facility ("Five Points" or "the correctional facility"), in Romulus, New

York.  Plaintiff particularly alleges that despite being an "overt homosexual" whose

"lifestyle" other inmates "cannot handle," Defendants have refused Plaintiff's repeated

requests to be placed in voluntary protective custody, and instead have maintained

Plaintiff's placement in the general prison population at Five Points, a facility that is fully

"double-bunked" requiring two inmates in each cell.  Plaintiff alleges that as a result of

the "double-bunked" cells, he has been forced to share a cell with other inmates who

---

[1] Although Plaintiff's motions seeking TROs and an injunction are dispositive, whereas his motions
seeking sanctions, leave to file a further amended complaint, and to compel Defendants to file an answer
to the Amended Complaint are nondispositive, given the interrelated nature of the motions, all motions
are addressed in this combined Report and Recommendation and Decision and Order in the interests of
clarity and judicial economy.

are either homophobic and assault Plaintiff, or are also homosexual and sexually assault Plaintiff.  On April 26, 2012, Plaintiff filed exhibits to supplement the Complaint (Doc. No. 5) ("Plaintiff's Exh(s). __").  On December 17, 2012, Plaintiff filed an amended Complaint (Doc. No. 7) ("Amended Complaint"), naming as Defendants DOCCS Commissioner Brian Fischer ("Fischer"), Five Points Superintendent ("Superintendent"), Deputy Superintendent for Security John C. Colvin ("Colvin"), Corrections Officer Brown ("Brown"), Corrections Sergeants R. Shielos ("Shielos"), Walawender ("Walawender"), and John Doe ("John Doe"), and Director of Movement and Control/Inmate Housing (Albany) ("DOCCS Housing Director") ("Defendants").

Plaintiff filed motions seeking temporary restraining orders ("TRO"), on February 26, 2013 (Doc. No. 11) ("First TRO Motion"), and February 28, 2013 (Doc. No. 12) ("Second TRO Motion").  On March 14, 2013, Plaintiff filed a Motion seeking monetary sanctions against Defendants for alleged acts taken against Plaintiff in retaliation for the instant action (Doc. No. 14) ("Sanctions Motion").  On April 12, 2013, Plaintiff filed a motion seeking a permanent injunction, removing Plaintiff from Five Points so as to avoid further retaliation and physical abuse as alleged by Plaintiff (Doc. No. 17) ("Injunction Motion").  On June 7, 2013, Plaintiff filed motions seeking leave to file a further amended complaint (Doc. No. 22) ("Motion to Amend"), and to compel Defendants Director of Housing and Brown to file their answers (Doc. No. 23) ("Motion to Compel Answers").  On June 28, 2013, Defendants filed in response to all six of Plaintiff's pending motions, the Declaration of Assistant Attorney General David J. Sleight (Doc. No. 28) ("Sleight Declaration").  On September 3, 2013, Plaintiff filed the Declaration and Opposition to Defendants' Answer to Plaintiff's TRO, Injunction,

Sanctions Motion, in further support of his First TRO Motion, Second TRO Motion, Injunction Motion, Motion to Compel, Sanctions Motion, and Motion to Amend (Doc. No. 30) ("Plaintiff's Reply").  Oral Argument was deemed unnecessary.

Based on the following, the First TRO Motion should be DENIED; the Second TRO Motion should be GRANTED; the Injunction Motion should be DENIED; the Motion for sanctions is DENIED; the Motion to Amend is GRANTED; and the Motion to Compel is DISMISSED as moot in part and DENIED in part.

## __FACTS__[2]

On October 28, 2010, Plaintiff Michel Toliver ("Plaintiff" or "Toliver"), was transferred from Elmira Correctional Facility ("Elmira") to Five Points Correctional Facility ("Five Points" or "the correctional facility"), a "double-bunked" correctional facility, with all inmates within the general prison population assigned two to a cell, *i.e.*, "double-bunked."  Pursuant to DOCCS Regulation § 1701.5 ("§ 1701.5"), DOCCS Deputy Superintendent of Security, in fulfilling his responsibility for selecting inmates for double-cell housing, is to conduct a risk assessment to determine each inmate's eligibility, suitability, and compatibility for double-cell housing.  7 NYCRR § 1701.5(a). Generally excluded from consideration for double-cell housing are "victim prone" inmates, defined as "[i]nmates currently in 'voluntary protective custody' or 'involuntary protective custody' status . . ." as well as "any inmate with a pattern of being victimized by other inmates resulting in serious physical injury or sexual abuse."  7 NYCRR § 1701.5(c)(4)(i).

---

[2] The Facts are taken from the pleadings and motion papers filed in this action.

At Five Points, Plaintiff, who is homosexual and uses either a walker or a wheelchair to ambulate, initially was assigned to share cell number 30 ("cell 30"), with "Webster" who Plaintiff maintains was a member of the "Bloods" gang.  Webster allegedly informed Plaintiff that Plaintiff could not stay in cell 30 with Webster.  Plaintiff sought assistance from a passing housing unit officer who brought Plaintiff to the DOCCS sergeant on duty whom Plaintiff notified of Webster's threats.  The sergeant allegedly responded by advising that Plaintiff would remain assigned to share cell 30 with Webster regardless of Plaintiff's complaints, and then returning Plaintiff to cell 30. Upon Plaintiff's return to cell 30, Webster was not there but was attending his work-program.  When Webster returned, however, he threatened to use physical force against Plaintiff, and slapped Plaintiff's face, after which Plaintiff promised to leave the cell, and stood by the cell's door hoping to make contact with any passing DOCCS officer who might be able to render assistance.  Plaintiff maintains he was unable to sleep while housed with Webster out of fear that Webster would harm him.  Webster allegedly threw soup and cold water at Plaintiff, and made Plaintiff wash Webster's socks, underwear, sweatshirt, and shorts, and scrub the cell's toilet, sink, and shower.

The next morning, October 29, 2010, Webster allegedly threatened to physically assault Plaintiff if Plaintiff were still in cell 30 when Webster returned from breakfast. While Webster was at breakfast, Plaintiff begged and pleaded with passing DOCCS officers for protection from Webster, but his pleas were ignored and, upon returning from breakfast, Webster, as threatened, punched Plaintiff in the face, knocking Plaintiff to the floor, at which point Plaintiff was finally removed from cell 30 and permitted to speak with another sergeant who permitted Plaintiff to apply for voluntary protective

custody.  Later that day, Plaintiff was interviewed by Defendant Shielos in connection

with Plaintiff's request to be placed in voluntary protective custody, submitted on a

DOCCS Voluntary Protective Custody Status Consideration Form ("PC Form").[3]  The

relevant prison regulation provides that an inmate may be admitted into "voluntary

protective custody" if the inmate "lacks the ability to live in the general facility community

and [ ] may for good cause be restricted from communication with the general inmate

population and [ ] voluntarily accepts admission into protective custody status."  7 N.Y.

Code Rules & Regs. ("NYCRR") § 330.2(a).[4]  Once admitted into voluntary protective

custody, an inmate is to be "evaluated and recommended for transfer to facilities where

they may be appropriately programmed in general population."  7 NYCRR § 330.3.

Plaintiff explained to Shielos that as an "overt homosexual," PC Form, who uses a

walker and sometimes a wheelchair, he felt vulnerable in the general prison population

and unable to defend himself should he be attacked.  On November 15, 2010,

Defendant Colvin, as Five Points Deputy Superintendent of Security, approved the

request, thereby assigning Plaintiff protective custody status.  *Id.*

After several weeks in voluntary protective custody, Plaintiff was, without any

warning, relocated to another cell, cell number 50 ("cell 50"), where he was double-

bunked with "Payne," another homosexual inmate who had been making sexual

advances toward Plaintiff, who did not share Payne's affections.  Plaintiff complained to

Defendant Brown that he feared being harmed by Payne, but Brown allegedly

responded Plaintiff would have to find a way to get along with Payne.  A couple of days

later, Payne again made sexual advances toward Plaintiff, who again asked Brown to

---

[3]  A copy of the PC Form submitted by Plaintiff on October 29, 2010, is filed as Plaintiff's Exh. 1.
[4]  Unless otherwise indicated, all bracketed material is added.

reassign Plaintiff to a different cell and requested to speak with a sergeant, but Plaintiff's requests were ignored.  On Thanksgiving Day, 2010, Plaintiff awoke to find Payne had committed an unhygienic sexual act on Plaintiff and, after showing the cell unit officer what had happened, Plaintiff was taken to the area sergeant who provided Plaintiff with a towel and rubbing alcohol to wash. The sergeant, however, informed Plaintiff he was not able to remove Plaintiff from the cell.  The sergeant then gave Plaintiff a choice of either returning to cell 50 with Payne, or being assessed a disciplinary violation for refusing to double-bunk, and being placed in the "box" where Plaintiff would still be double-bunked, possibly with "someone who hates faggots as opposed to wanting to fuck you."  Amended Complaint at 38.  Plaintiff then agreed to return to cell 50 with Payne.  Upon reentering cell 50, Plaintiff observed that his property bags, which were still packed, were open, and that Payne had urinated on Plaintiff's clothes, and left Plaintiff a love letter and a "sweetheart handmade greeting card."  Amended Complaint at 39.

The next day, Plaintiff stopped the nurse who was passing cell 50 and requested to speak with psychiatrist Dr. York ("Dr. York").  The nurse arranged for Plaintiff to speak with Dr. York.  Plaintiff told Dr. York everything that had happened at Five Points, and Dr. York arranged for Plaintiff to be removed from cell 50.  Plaintiff, however, was next assigned to cell number 47 ("cell 47"), with inmate Ingraham ("Ingraham"), who was both a member of the Bloods gang and "an overt homosexual."  Amended Complaint at 40.  Plaintiff alleges that every day Ingraham took Plaintiff's breakfast and lunch food, allowing Plaintiff to eat only dinner, forced Plaintiff to wash Ingraham's clothes and sheets, would not allow Plaintiff to use the bathroom, turn on the lights, or

make any noise when Ingraham was present in the cell, and read Plaintiff's mail.

Plaintiff maintains he filed several complaints about the abuse he received from

Ingraham, but nothing was done about the situation until Ingraham filed a complaint

advising Plaintiff could only remain in cell 47 if DOCCS paid Ingraham; otherwise,

Plaintiff would "become a 'poster victim.'"  Amended Complaint at 41.  Several days

after Ingraham's complaint, Ingraham was removed from cell 47.

After several more days, another inmate, "Desenoyers," was moved into cell 47

with Plaintiff.  According to Plaintiff, Desenoyers was "a white male member of the 'Alien

Nation' bald head homophobic," Amended Complaint at 43, who stated he intended to

kill Plaintiff.  Plaintiff maintains he wrote DOCS administration 20 letters about

Desenoyers, but nothing was done as Desenoyers repeatedly assaulted Plaintiff in cell

47, promising to "feed [Plaintiff] to the pigeons," flicking cigarette ashes and butts onto

Plaintiff's bed sheets and spitting on Plaintiff, and at one point throwing feces on Plaintiff

as he slept.  *Id.* at 42.  The abuse continued until one afternoon when Desenoyers

threatened that if Plaintiff was not removed from the cell Desenoyers would "stab

[Plaintiff's] ass."  *Id.*  Desenoyers' actions so frightened Plaintiff that Plaintiff stayed

awake the entire night, afraid that otherwise he would be attacked in his sleep.  When

Desenoyers realized the correctional facility's housing unit officers were not going to

move Plaintiff, Desenoyers wrote a letter to Five Points superintendent advising he was

a "skin head" member of the "Alien Nation" and that Desenoyers was waiting only 24

hours for either Plaintiff or Desenoyers to be removed from cell 47, or Desenoyers

would kill Plaintiff "in the name of his Nation."  Complaint at 43.  Desenoyers was

removed from cell 47 later that day.

A few days later another, unidentified inmate was placed in cell 47 with Plaintiff. Although such inmate remained in cell 47 for only a few hours, during his brief stay, the inmate assaulted Plaintiff, punching and kicking him while a DOCCS officer watched, but did not intervene to stop the assault. Plaintiff maintains this incident occurred shortly after Plaintiff received an answer, dated January 25, 2011, to another complaint Plaintiff filed against Colvin.

When Plaintiff commenced the instant action on March 2, 2012, he had been transferred from Five Points to Shawangunk Correctional Facility in Wallkill, New York. On some unspecified date between the commencement of this action and the filing of the Amended Complaint on December 17, 2012, Plaintiff had been transferred to Upstate Correctional Facility in Malone, New York. On January 30, 2012, however, Plaintiff was transferred back to Five Points, where Plaintiff was initially placed in protective custody for one week, but was then reassigned to the general prison population in cell number 49 ("cell 49"), and further requests for voluntary protective custody placement were denied.

Early in the morning of February 17, 2013, Plaintiff, complaining of chest pains, was escorted to the infirmary where he was treated with nitroglycerin before being transported, against his will, to Cayuga Medical Center ("CMC"). Upon returning from CMC, Plaintiff was met by several DOCCS officers from the Five Points' special housing unit ("SHU"), and taken in handcuffs and placed in SHU. Plaintiff maintains he was "set up" in that while being treated at CMC, Defendants conspired to retaliate against Plaintiff for commencing the instant action, by placing a sharpened toothbrush and a can of tobacco in Plaintiff's cell, then issuing an Inmate Misbehavior Report ("Inmate

Misbehavior Report"), charging Plaintiff with possession of a weapon and contraband.

According to Plaintiff, the discovery of the sharpened toothbrush and tobacco and

subsequent disciplinary charges would negatively affect Plaintiff's parole release

hearing that was scheduled two weeks later, and could result in Plaintiff's incarceration

for an additional three years.  Plaintiff further maintains the altered toothbrush allegedly

discovered in his cell was purple, whereas Plaintiff's toothbrush was pink, and Plaintiff

has never smoked or used tobacco.  At the related  Tier III disciplinary hearing, Plaintiff

was found guilty by DOCCS Deputy Jones ("Jones" of possession of a weapon and an

altered item, for which Jones imposed a sentence of six months loss of recommended

good time, six months in SHU, and one year loss of phone, recreation, packages, and

commissary privileges.[5]  Plaintiff maintains that because a weapons possession prison

infraction is considered a violent charge, the guilty finding will almost certainly result in

the denial of parole whereas Plaintiff, previous to the February 17, 2013 discovery of the

altered toothbrush and tobacco, had never faced such a charge nor lost a single day of

good time for any reason.  Although it is not clearly stated in the record whether Plaintiff

was, in fact, denied release on parole because of the guilty disposition on the Inmate

Misbehavior Report, that Plaintiff remains incarcerated strongly suggests parole was, in

fact, denied.

## DISCUSSION

Plaintiff has six motions pending before the court.  Plaintiff's First TRO Motion

seeks a temporary restraining order "against any and all adverse actions" resulting from

the disciplinary charge pertaining to the altered toothbrush discovered in cell 49,

---

[5] There is no indication in the record whether Plaintiff was found guilty on any charge related to the possession of tobacco.

including any negative effect on Plaintiff's parole board hearings.  Plaintiff's First TRO

Motion at 2.  By his Second TRO Motion, Plaintiff seeks a temporary restraining order

removing Plaintiff from Five Points, expunging the allegedly false disciplinary charges

from his record, placing Plaintiff in protected custody, and ordering Defendants to cease

all forms of retaliation against Plaintiff.  Plaintiff's Second TRO at 7.  Plaintiff's Injunction

Motion seeks a court order directing Plaintiff's removal from Five Points to prevent

Plaintiff from suffering further retaliation and physical abuse by Defendants and other

inmates.  Injunction Motion at 3.  In his Sanctions Motion, Plaintiff seeks monetary

sanctions against Defendants for each day Plaintiff is housed in SHU as a result of

alleged false prison disciplinary charges lodged to retaliate against Plaintiff for

commencing the instant action, and a court order directing Plaintiff's immediate release

from SHU.  Sanctions Motion at 5-6.  Plaintiff's Motion to Amend seeks leave to further

amend the Amended Complaint to add new defendants and to assert additional

constitutional violations. Motion to Amend at 1.  Finally, by way of his Motion to Compel,

Plaintiff requests a court order directing Defendants to identify Defendant Inmate

housing Director, as well as directing Defendants Inmate Housing Director and Brown to

serve their answer to the Amended Complaint.  Motion to Compel at 2.

  In opposition to all six of Plaintiff's pending motion, Defendants filed the Sleight

Declaration, consisting of ten paragraphs that contains little law and asserts even fewer

facts.   In particular, no opposing affidavits were filed on behalf of any Defendants in

response to Plaintiff's motions for injunctive relief.

1.      **Temporary Restraining Orders and Permanent Injunction**

Plaintiff seeks a TRO prohibiting any adverse action against Plaintiff pertaining to

the February 17, 2013 Inmate Misbehavior Report charging Plaintiff with, *inter alia*,

possession of a weapon, *i.e.*, the altered toothbrush, including any disposition that could

lead to Plaintiff being denied release on parole.  First TRO Motion at 2.  Plaintiff seeks

another TRO prohibiting Defendants from denying Plaintiff's requests for placement in

voluntary protective custody.  Second TRO Motion at 1.  Plaintiff also seeks a

mandatory injunction directing Plaintiff's transfer from Five Points to another correctional

facility to prevent Plaintiff from being further victimized by other inmates based on his

sexual orientation, and by DOCCS personnel in retaliation against Plaintiff for

commencing the instant action.  Injunction Motion at 1-2.  In opposition to Plaintiff's

requests for TROs and injunctive relief, Defendants argue Plaintiff cannot meet his

burden of making a "clear showing" that he is entitled to such relief.  Sleight Declaration

¶ 9.  In further support of the motions, Plaintiff asserts his requests for TROs should be

granted based on Defendants' failure to oppose the First and Second TRO Motions,

Plaintiff's Reply at 13, and that Plaintiff remains incarcerated at Five Points where he is

repeatedly assaulted by DOCCS officers in retaliation for commencing the instant

action, and will continue to suffer such harm absent the requested injunctive relief.  *Id.*

at 12.

The standard for entry of a TRO is the same as for a preliminary injunction,

requiring Plaintiff demonstrate

> '(1) irreparable harm in the absence of the injunction and (2) either (a) a
> likelihood of success on the merits or (b) sufficiently serious questions going to
> the merits to make them a fair ground for litigation and a balance of hardships
> tipping decidedly in the movant's favor.'

*MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004) (quoting *Merkos L'Inyonei Church, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002)).

## A.     First TRO Motion

By way of the First TRO Motion, Plaintiff requests a TRO preventing Plaintiff from any negative consequences as a result of the Inmate Misbehavior Report.  Such request, however, should be DENIED because the requested relief does not relate to any of the allegations of the underlying Amended Complaint but, rather, relates to the new claims Plaintiff seeks to allege.  *See McAllister v. Goord*, 2009 WL 5216953, at *2 (N.D.N.Y. Dec. 30, 2009) ("the relief that a plaintiff seeks by way of injunction must relate to the allegations contained in the underlying complaint." (citing *Allen v. Brown*, 1998 WL 214418, at * 4 (N.D.N.Y. Apr. 28, 1998))).

## B.     Second TRO Motion

In his Second TRO Motion, Plaintiff seeks a TRO prohibiting Defendants from denying Plaintiff's further requests for placement in voluntary protective custody. Second TRO Motion at 1.  As discussed, Discussion, *supra*, at 12, Defendants offer nothing in opposition to this request which meets the criteria for a TRO.

It is settled that prison official have a duty to protect prisoners from violence at the hands of other prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1993) (citing cases).  Not every injury suffered by an inmate at the hands of another inmate, however, "translates into constitutional liability for prison officials responsible for the victim's safety."  *Id.* at 834.  Rather, "a prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation must be, objectively,

'sufficiently serious.'" *Id.* (citing cases).  Where the alleged deprivation is failure to

prevent harm, "the inmate must show he is incarcerated under conditions posing a

substantial risk of serious harm." *Id.*  With regard to the subjective requirement, in

cases involving failure to prevent harm to an inmate, the inmate must demonstrate

prison officials displayed deliberate indifference to the fact that the plaintiff is

incarcerated under conditions posing a substantial risk of serious harm.  *Id.*   The

"subjective recklessness" standard, as used in criminal law, is the test for whether

prison authorities have acted with "deliberate indifference" toward prison inmates in

violation of the Eighth Amendment rights.  *Id.* at 835.  The failure to remove an inmate

from the general prison population to protect the inmate from physical harm states a

claim for deliberate indifference to the prisoner's safety in violation of the Eighth and

Fourteenth Amendments.  *See Moore v. Goord*, 7 Fed.Appx. 2, at 3 (2d Cir. Mar. 23,

2001) (vacating district court's decision dismissing complaint for failure to state a claim

and remanding where inmate plaintiff alleged defendants DOCCS prison officials and

guards exhibited deliberate indifference to plaintiff's safety in violation of the Eighth and

Fourteenth Amendment for failing to protect inmate from assault by other inmates while

incarcerated at correctional facility, and then waiting 11 days after the assault before

removing plaintiff from the general prison population to protective custody).  Further, an

inmate who believes he is under a substantial risk of serious injury based on prison

officials' disregard of threats of harm need not await for the threatened "tragic event"

such as an actual assault before obtaining relief, but may seek injunctive relief based on

the claim that defendant corrections officials are knowingly and unreasonably

disregarding an objectively intolerable risk of harm and will continue to do so absent a

court order directing otherwise. *Farmer*, 511 U.S. at 845 (rejecting defendant prison official's argument that subjective deliberate indifference necessary to support "court-ordered correction of objectively inhumane prison conditions" will be found only where a prisoner first suffers physical injury, citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them.")). "[T]o establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future. In so doing, the inmate may rely, in the district court's discretion, on developments that postdate the pleadings and pretrial motions, as the defendants may rely on such developments to establish the inmate is not entitled to an injunction." *Farmer*, 511 U.S. at 846. In the instant case, Plaintiff has established the he is likely to succeed on the merits of both prongs of his Eighth Amendment failure to protect claim so as to warrant the requested injunctive relief.

In particular, Plaintiff maintains, and Defendants do not dispute, that the failure to house Plaintiff in voluntary protective custody has resulted in Plaintiff being housed in the general prison population where he is double-bunked and either physically abused by other inmates who are hostile to Plaintiff's homosexuality, or sexually abused by other inmates who are also homosexuals. In fact, during his initial incarceration at Five Points, Plaintiff was granted voluntary protective custody status based on his sexual orientation and unspecified physical disabilities requiring Plaintiff use either a walker or wheelchair to ambulate. PC Form (Defendant Shielos recommending Plaintiff be placed in protective custody because of Plaintiff's homosexuality and current medical condition,

and approved by Defendant Colvin on November 15, 2010).  Why Plaintiff was later removed from protective custody and returned to the general prison population only a few weeks later is not explained in the record.  Specifically, Defendants do not deny the alleged physical and sexual assaults Plaintiff later endured while housed in the general prison population, which is significant because such assaults render Plaintiff one of the "victim prone" inmates who are generally excluded from double-bunking consideration. 7 NYCRR § 1701.5(c)(4)(i) (defining "victim prone" inmates as "[i]nmates currently in 'voluntary protective custody' or 'involuntary protective custody' status . . ." as well as "any inmate with a pattern of being victimized by other inmates resulting in serious physical injury or sexual abuse").  These facts, undisputed by Defendants, satisfy both prongs of the TRO standard, including irreparable harm in the absence of the TRO, including being the victim of continued assaults, and either a likelihood of success on the merits or sufficiently serious questions as regards the merits of the instant action, with a balance of hardships decidedly tipping in Plaintiff's favor, given that Defendants have, despite knowledge of such assaults rendering Plaintiff a "victim prone inmate," repeatedly denied Plaintiff's requests to be placed in voluntary protective custody. Upon this record, it would be an abuse of discretion not to grant the requested equitable relief to protect Plaintiff against a known, as conceded by Defendants, risk of serious physical harm.

Plaintiff's Second TRO Motion therefore should be GRANTED; Defendants should be directed not to deny Plaintiff's further requests to be housed in protective custody, assuming Plaintiff is able to demonstrate, as Plaintiff has on this record, a continued and palpable risk of such harm.

### C.    Injunction Motion

In his Injunction Motion Plaintiff, seeks relief in connection with the Inmate Misbehavior Report to enforce his request for sanctions for keeping Plaintiff in SHU, denial of privileges, and interfering with Plaintiff's likelihood of being released on parole. As with the First TRO Motion, the Injunction Motion should be DENIED because the relief requested does not relate to any of the allegations of the underlying Amended Complaint but, rather, relates to the new retaliation claims Plaintiff seeks to allege. *McAllister*, 2009 WL 5216953, at *2 ("the relief that a plaintiff seeks by way of injunction must relate to the allegations contained in the underlying complaint." (citing *Allen v. Brown*, 1998 WL 214418, at * 4 (N.D.N.Y. Apr. 28, 1998))).

### 2.    Motion for Sanctions

Plaintiff seeks a court order imposing monetary sanctions against Defendants for each day since January 30, 2013, that Plaintiff remains incarcerated at Five Points since he was transferred back, as well as for each day Plaintiff remains confined in SHU allegedly in retaliation for commencing the instant action.  Motion for Sanctions at 5. Plaintiff also again requests a court order directing Plaintiff's release from Five Points. *Id.* at 6.  Defendants have not responded to the Motion for Sanctions.  In further support of his Motion for Sanctions, Plaintiff references Defendants' failure to respond to the Motion for Sanctions.  Plaintiff's Reply at 6.

Plaintiff has not specified the legal basis for the Motion for Sanctions.  Sanctions may be imposed against a party to an action under Fed.R.Civ.P. 11 ("Rule 11") or 37 ("Rule 37"), 28 U.S.C. § 1927 ("§ 1927"), or the court's inherent power, none of which is

applicable here; rather, it appears Plaintiff's motion is based on the incorrect belief that Plaintiff's TRO Motions have already been granted.

In particular, Rule 11, by its terms, is the vehicle by which sanctions may be obtained in connection with the filing in court of pleadings, motion papers, or other documents that are baseless, filed in bad faith, or intended to harass, unnecessarily delay, or needlessly increase the cost of litigation.  Fed.R.Civ.P. 11(b) and (c).  Because Plaintiff does not seek sanctions based on any pleadings, motion papers, or other documents filed by Defendants in this action, Rule 11 provides no basis for the Motion for Sanctions.

Sanctions against a party are also available under Rule 37(b) for failing to comply with a court order or to respond to discovery.  Plaintiff, however, has not moved for sanctions based on Defendants' failure to comply with any court order or failure to respond to any discovery request.  Accordingly, Rule 37(b) also offers no basis for Plaintiff's Sanctions Motion.

Sanctions may also be ordered under 28 U.S.C. § 1927 against "an[y] attorney or other party admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously . . . ."  Accordingly, by its terms, § 1927 applies to attorneys and parties "admitted to conduct cases" in a federal court.  Because they are not attorneys, sanctions under § 1927 are not available as against Defendants.

Nor is there any basis supporting invoking the court's inherent power to sanction Defendants.  Rather, a careful reading of Plaintiff's Motion for Sanctions establishes that

Plaintiff, rather than seeking true sanctions, offers argument in support of what may become Plaintiff's damages should he ultimately succeed in this action.

In the absence of any grounds supporting an award of sanctions against Defendants, Plaintiff's Motion for Sanctions is DENIED.

**3.     Motion to Amend**

Plaintiff seeks leave to file a further amended complaint to assert two new claims alleging retaliation.  Motion to Amend at 1.  In opposition, Defendants assert they are unable to assess whether Plaintiff's proposed amendments would be futile because Plaintiff failed to attach to the Motion to Amend a copy of the proposed amended complaint, yet Defendants "notice that Plaintiff did attach what appears to be a proposed amended complaint to his motion to compel. . . ."[6]  Sleight Declaration ¶ 4. Accordingly, Defendants request an order directing Plaintiff to identify whether the document attached to his Motion to Compel is the proposed amended complaint, and granting Defendants additional time to respond to the motion.  *Id.*  In further support of the Motion to Amend, Plaintiff argues Defendants have failed to establish that the new claims Plaintiff seeks to assert are frivolous, or will unduly delay or prejudice Defendants, as required to deny such motion.  Plaintiff's Reply at 1-2.  Plaintiff also questions Defendants' sincerity in questioning whether the proposed amended complaint attached to Plaintiff's Motion to Compel is the Proposed Second Amended Complaint, asserting that Defendants should not be granted any additional time to respond in opposition to the Motion to Amend.  *Id.* at 3-4.

---

[6] Plaintiff's Motion to Compel was filed the same day as the Motion to Amend.

Fed.R.Civ.P. 15 provides that leave to amend a pleading "shall be freely granted when justice so requires."  An amended complaint may be filed pursuant to Fed.R.Civ.P. 15(a) where the new allegations do not unduly prejudice an opponent, are not the result of undue delay or bad faith, and are not futile.  *Foman v. Davis*, 371 U.S. 178, 181 (1962).  Absent a showing that significant additional discovery burdens will be incurred or that the trial of the matter will be significantly delayed, amendment should be permitted.  *Block v. First Blood Associates,* 988 F. 2d 344, 350 (2d Cir. 1993).

Preliminarily, the court addresses Plaintiff's failure to attach a copy of the second proposed amended complaint.  "Ordinarily, a movant's failure to submit a proposed amended complaint constitutes sufficient grounds to deny a motion to amend."  *Murray v. New York*, 604 F.Supp.2d 581, 588 (W.D.N.Y. 2009) (citing *LaBarbara v. Ferran Enterprises Inc.*, 2009 WL 367611, at * 3 (E.D.N.Y. Feb.  10, 2009) ("In order to meet the requirements of particularity in a motion to amend, a complete copy of the proposed amended complaint must accompany the motion so that both the Court and the opposing party can understand the exact changes sought.")).  *See also* Local Rules of Civil Procedure – WDNY, Rule 15(a) ("A movant seeking to amend or supplement a pleading must attach an unsigned copy of the proposed amended pleading as an exhibit to the motion.").  Where, however, "the movant's papers adequately explain the basis for, and nature of, the proposed amendment, [ ], the failure to attach a proposed amended complaint to the motion is not necessarily fatal."  *Murray*, 604 F.Supp.2d at 588.

In the instant case, Plaintiff has attached a copy of his proposed second amended complaint ("Proposed Second Amended Complaint") to his Motion to Compel,

in which the basis for and nature of the proposed amendments are adequately explained.  In fact, in the Motion to Compel, Plaintiff specifically identifies the attached document as the Proposed Second Amended Complaint.  Motion to Compel at 2.  Given that both the Motion to Amend and the Motion to Compel were filed on June 7, 2013, it is without question that the Proposed Second Amended Complaint relates to Plaintiff's Motion to Amend and Defendants' assertions that that are unable to assess whether the new claims Plaintiff seeks to assert are futile, Sleight Declaration ¶ 4 is unfounded.

A review of the Proposed Second Amended Complaint demonstrates that the allegations Plaintiff seeks to newly assert will not unduly prejudice Defendants and are not the result of undue delay or bad faith.  *Foman*, 371 U.S. at 181.  Specifically, the motion was not unduly delayed given that Plaintiff moved to amend his complaint on June 7, 2013, approximately four months after being transferred back to Five Points, three months after the filing of the assertedly false misbehavior report, and one month after the Tier III disciplinary hearing.  Because this action is still in a relatively early stage of litigation, with no Fed.R.Civ.P. 16(b) scheduling conference yet held or scheduling order issued, nor any discovery schedule set, Defendants cannot assert the filing of a second amended complaint will cause undue prejudice, or significant additional discovery or delay.  *Block,* 988 F. 2d at 350.  As such, the only remaining ground for denying Plaintiff's Motion to Amend is futility.

Where a requested pleading amendment is futile, "it is not an abuse of discretion to deny leave to amend" to the moving party.  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993).  An amendment is futile "if the proposed amended complaint

would be subject to 'immediate dismissal' for failure to state a claim or on some other ground." *Jones v. New York Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir.1999).  A determination that a proposed claim is futile is made under the same standards that govern a motion to dismiss under Rule 12(b)(6).  *A.V. By Versace, Inc. v. Gianni Versace, S.p.A.*, 160 F.Supp.2d 657, 666 (S.D.N.Y.2001).  Because "'only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . ,'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)), the court considers the plausibility of the two retaliation claims Plaintiff seeks to add, and a review of the Proposed Second Amended Complaint establishes the retaliation claims Plaintiff seeks to add are not futile.

To state a claim for retaliation, Plaintiff must allege (1) he engaged in protected activity; (2) Defendants were aware of the activity; (3) Plaintiff suffered an adverse action at the direction of Defendants; and (4) a causal connection between the protected activity and the adverse action.  *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Whether a prison official's conduct constitutes an "adverse action" depends on whether the conduct "would deter a similarly situated individual of ordinary fitness from exercising his or her constitutional rights."  *Alicea v. Howell*, 387 F.Supp.2d 227, 237 (W.D.N.Y. 2005) (quoting *Dawes*, 239 F.3d at 492).  Retaliation claims by prisoners, however, are typically approached "with skepticism and particular care," because "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act."  *Dawes*, 239 F.3d at 491.

Here, Plaintiff seeks to add a retaliation claim alleging Defendants' decision, made after being served with the Amended Complaint, to transfer Plaintiff back to Five Points where Plaintiff was again housed in the general prison population, sexually and physically assaulted, and repeated requests to be placed in voluntary protective custody were denied, was intended as retaliation against Plaintiff for filing the instant action. *See* Proposed Second Amended Complaint, First Claim.  With regard to this proposed claim, Plaintiff sufficiently identifies that the transfer in question occurred on January 30, 2013, a date not remote in time to the filing of the Amended Complaint on December 17, 2012, and specifically names as Defendants DOCCS Housing Director and DOCCS Commissioner Fischer, both of whom, based on the allegations of the Amended Complaint, knew or should have known of the problems Plaintiff allegedly experienced during his previous incarceration in the general prison population at Five Points. Plaintiff also specifies the constitutional basis for the relief he seeks as the First, Fifth, Sixth, Eighth, and Fourteenth Amendments.  Accordingly, the first claim asserted in the Proposed Second Amended Complaint is not futile and will be allowed.

The second new claim for retaliation Plaintiff seeks to assert relates to the unscheduled February 17, 2013, search of Plaintiff's cell while he was at CMC seeking treatment for chest pains despite Plaintiff's protests that the pains had lessened and he did not wish to be transported to CMC.  *See* Proposed Second Amended Complaint, Second Claim.  During such search Defendants purportedly recovered a toothbrush that had been altered to have a sharpened end, leading to the filing of prison disciplinary charges against Plaintiff and an ensuing Tier III disciplinary hearing following which Plaintiff, on May 15, 2013, was found guilty of possessing a weapon and an altered

item, for which the imposed disciplinary sentence included six months loss of recommended good time, six months in SHU, one year loss of phone, recreation, packages, and commissary privileges. Furthermore, while the disciplinary charges against Plaintiff were pending, Plaintiff's scheduled appearance before the parole board was postposed pending disposition of the disciplinary charges.  Plaintiff maintains that a guilty disposition would almost certainly result in the denial of release on parole, despite no other prison disciplinary violations on Plaintiff's record.  Although nothing in the record establishes whether Plaintiff was denied release on parole, that Plaintiff, to date, remains incarcerated strongly suggests parole was not granted, a fact not denied by Defendants.  According to Plaintiff, the events surrounding his transport, against his wishes, to CMC for medical treatment, the unscheduled search of Plaintiff's cell during his absence while at CMC, the finding of the altered toothbrush which was purple, in contrast to Plaintiff's toothbrush which is pink, the filing of the false disciplinary charges which resulted in a guilty disposition and imposition of disciplinary sentence including confinement in SHU and loss of privileges, and ultimately a denial of Plaintiff's request for parole, were all intended as retaliation against Plaintiff for commencing this action.

Although the filing of a false misbehavior report generally does not give rise to a constitutional violation so long as the inmate against whom the charges are levied is provided with a fair Tier III disciplinary hearing, *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) ("the key inquiry in assessing an allegation that an inmate has been found guilty of false disciplinary charges is whether or not the prison has provided the inmate with the minimum procedural due process protections guaranteed by the Fourteenth Amendment"), where, as here, the asserted false misbehavior report allegedly is filed to

retaliate against an inmate for exercising his right to commence litigation seeking redress of civil rights violations, a plausible First Amendment claim is stated. *See Jones v. Coughlin*, 45 F.3d 677, 679-80 (2d Cir. 1995) (stating claim alleging retaliatory filing of false misconduct charges "is distinct from [a] procedural due process claim . . . ."); and *Franco*, 854 F.2d at 590 ("It may not be clear to what extent section 1983 is available to vindicate certain substantive rights arising out of the Due Process Clause, [yet] [t]here is no question [ ] that an inmate may resort to section 1983 in attempting to vindicate substantive rights arising out of such other [constitutional] provisions as the First Amendment . . . ." (citing cases)).  Plaintiff's second claim in the Proposed Second Amended Complaint is, thus, not futile on its face, and it should be permitted.

The court observes, however, that despite naming all the current Defendants as well as those to be newly added as defendants, the Proposed Second Amended Complaint contains factual allegations and claims for relief pertaining only to the two new claims Plaintiff seeks to add.  This is significant because an amended complaint supersedes and replaces the previous complaint.  *See Jean-Laurent v. Wilkerson*, 461 Fed.Appx. 18, 23 (2d Cir. Feb. 8, 2012) (holding district court did not err in preventing *pro se* inmate plaintiff from trying claims not stated in second amended complaint before a jury, and citing *Dluhos v. Floating & Abandoned Vessel Known as "New York"*, 162 F.3d 63, 68 (2d Cir. 1998) ("it is well-established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.")).  The filing of the Proposed Second Amended Complaint in its current format thus would effectively discontinue the action as to Plaintiff's Eighth Amendment failure to protect and Fourteenth Amendment due process claims alleged in the Amended Complaint, a result that, based on the

arguments set forth in the papers, is unintended.  Accordingly, Plaintiff should ensure that when filed, the second amended complaint contains the names of all who are sued as Defendants, and sets forth all factual allegations and claims for relief that Plaintiff intends to pursue in this action.

Plaintiff's Motion to Amend is GRANTED; Plaintiff is directed to forward the Second Amended Complaint to the Clerk of the Court, who is directed to file the Second Amended Complaint, and to cause the United States Marshal to serve copies of the Summons and Second Amended Complaint upon the named defendants.

### 4.     Motion to Compel

Plaintiff seeks a court order compelling Defendants to serve within two days answers to the Amended Complaint on behalf of Defendants DOCCS Housing Director and Brown, or be sanctioned $ 5,000 each for every day the answers are not served. Motion for Sanctions at 1-2.  Plaintiff also requests that the court (1) direct Plaintiff's transfer from Five Points where Defendants allegedly have engaged in repeated acts of retaliation against Plaintiff for filing the instant action, *id.* at 1, (2) grant Plaintiff leave to file an amended complaint adding additional claims and defendants, *id.* at 2-3, (3) direct service by the U.S. Marshals on the new defendants, *id.* at 7, (4) arrange a telephone or video conference regarding Defendants' decision to conspire to keep Plaintiff incarcerated in retaliation for filing the instant action, *id.*, (5) sanction Defendants for such retaliation, *id.*, and (6) review the record of the Tier III disciplinary hearing and make a ruling as to whether Plaintiff was "set up" by Defendants in connection with the prison disciplinary weapons possession charge, *id.*  In opposition, Defendants observe that the Motion to Compel seeks relief not typically associated with a motion to compel,

*i.e.*, responses to discovery requests.  Sleight Declaration ¶ 5.  Further, as regards

Plaintiff's primary request that the court issue an order compelling Defendants DOCCS

Housing Director and Brown to serve answers to the Amended Complaint, Defendants

assert that DOCCS Housing Director, has been identified to Plaintiff as Albert Prack

("Prack"), and an answer on Prack's behalf has been filed.  *Id.* ¶ 6.  Defendants further

maintain that Brown has never been served and, as such, Brown's time to answer never

commenced running, nor is Brown a defendant to this action.  *Id.*  In further support of

the motion, Plaintiff asserts Defendants did not serve him with a copy of their Answer to

the Amended Complaint "until the end of July," Plaintiff's Reply at 4, and that the record

indicates Brown was served with the Amended Complaint.  *Id.*

  Insofar as Plaintiff seeks a court order compelling Defendants DOCCS Housing

Director and Brown to serve an answer to the Amended Complaint, a review of the

docket demonstrates that, consistent with Defendants' assertions, Sleight Declaration

¶¶ 5-6, Defendants identified DOCCS Housing Director as Prack, *see* Acknowledgment

of Service (Doc. No. 9), at 9-10, on whose behalf an answer to the Amended Complaint

was filed on April 8, 2013 (Doc. No. 16).  This is consistent with Plaintiff's admission,

Plaintiff's Reply at 4, filed September 3, 2013, that he was served with Defendants'

Answer at the "end of July," which was after Plaintiff's Motion to Compel was filed on

June 7, 2013.  *Id.*  Further, although the record establishes that on December 28, 2012,

summons issued as to Brown in connection with the Amended Complaint, the

Acknowledgment of Service filed February 12, 2013 (Doc. No. 9), fails to indicate Brown

was actually served with the Amended Complaint.  Accordingly, as Defendants assert,

Sleight Declaration ¶¶ 5-6, Brown is neither a defendant to this action, nor has Brown's

time in which to answer the Amended Complaint started to run.  Plaintiff's request for an order compelling Defendants DOCCS Housing Director and Brown to serve answers to the Amended Complaint and related sanctions for failing to do so is, thus, DISMISSED as moot.

With regard to Plaintiff's request for leave to file a further amended complaint setting forth additional facts largely pertaining to new claims of retaliation Plaintiff seeks to assert against new defendants to be added, such request is a reiteration of Plaintiff's motion to amend and, as such, is DISMISSED as moot.  With regard to Plaintiff's requests for additional relief, the court has already, in connection with the discussion of Plaintiff's motion to amended, directed the U.S. Marshals to effect service of the second amended complaint once it has been filed, which would include service on, *inter alia*, Brown provided Brown is named as a defendant in the Second Amended Complaint Plaintiff files, and the motion is DISMISSED as moot to such request.  Because the second amended complaint has yet to be filed, Plaintiff's request for a video/telephone conference concerning the allegations to be raised in the as yet unfiled and unserved second amended complaint is premature.  Furthermore, insofar as Plaintiff requests that the court sanction Defendants for the asserted retaliation, and review Plaintiff's Tier III disciplinary hearing with an eye toward concluding the conspiracy, in fact, existed, because such requests essentially seek the same relief requested in the proposed second amended complaint, resolution of the requests must await resolution of the action, including discovery and related motion practice, and the Motion to Compel is DENIED as to such requests.

Finally, the court will schedule a conference pursuant to Fed.R.Civ.P. 16(b) following service of the Second Amended Complaint and answers are filed by all Defendants.

## CONCLUSION

Based on the foregoing, the First TRO Motion (Doc. No. 11) should be DENIED; the Second TRO Motion (Doc. No. 12), should be GRANTED; the Injunction Motion (Doc. No. 17) should be DENIED; the Motion for sanctions (Doc. No. 14) is DENIED; the Motion to Amend (Doc. No. 22) is GRANTED; and the Motion to Compel (Doc. Nol. 23) is DISMISSED as moot in part and DENIED in part.

Respectfully submitted, as to Motions for TRO (Docs. Nos. 11 and 12), and for Permanent Injunction (Doc. No. 17),

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

SO ORDERED, as to Motions for Sanctions (Doc. No. 14), to Amend (Doc. No. 22), and to Compel (Doc. No. 23).

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 27, 2014
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn,*  474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 27, 2014
            Buffalo, New York