UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

|  |  |
|---|---|
| MICHEL TOLIVER, | REPORT<br>and<br>RECOMMENDATION<br>---------------------------- |
| Plaintiff, |  |
| v. | DECISION<br>and<br>ORDER |
| JOHN C. COLVIN, Deputy Superintendent of<br>Security, MICHAEL SHEAHAN, Superintendent<br>of Five Points Correctional Facility, ROBERT<br>SHIELDS, Corrections Officer, ALBERT PRACK,<br>NYS DOCCS Director of Movement and Control/<br>Inmate Movement/Housing, NYS DOCCS NURSE<br>SANDIFUR, CORRECTIONS OFFICER S WHITE,<br>CORRECTIONS OFFICER JENKINS, MICHAEL<br>DONOHUE, NYS DOCCS Counselor, MARKETOS,<br>Corrections Lieutenant, CORRECTIONS<br>SERGEANT JONES, CORRECTIONS SERGEANT<br>S. CARPENTER, DEPUTY SUPERINTENDENT<br>OF ADMINISTRATION, CORRECTIONS OFFICER<br>SHELDON, and JONES, Deputy Superintendent of<br>Programs, | 12-CV-00227V(F) |
| Defendants. |  |

_____

APPEARANCES:      GLENN PINCUS, ESQ.
Attorney for Plaintiff
2410 North Forest Road
Suite 301
Getzville, New York  14068

ERIC T. SCHNEIDERMAN
NEW YORK STATE ATTORNEY GENERAL
Attorney for Defendants
CHRISTOPHER L. BOYD
Assistant Attorney General, of Counsel
Main Place Tower
Suite 300A
350 Main Street
Buffalo, New York  14202

## JURISDICTION

On May 21, 2013, this case was referred to the undersigned by Hon. Richard J.

Arcara for all pretrial matters including preparation of a report and recommendation on

dispositive motions.  The action is presently before the court on Defendants' motion,

filed July 28, 2015, to revoke Plaintiff's *in forma pauperis* status (Dkt. 57), Plaintiff's

motion, filed September 1, 2015, to compel discovery (Dkt. 61), Plaintiff's *pro se* motion,

filed September 10, 2015, for an extension of time to file exhibits (Dkt. 62), and

Defendants' motion, filed May 20, 2016, for summary judgment (Dkt. 84).[1]

## BACKGROUND

On March 21, 2012, Plaintiff Michel Toliver ("Plaintiff"), then proceeding *pro se*

and incarcerated at Shawangunk Correctional Facility ("Shawangunk"), in Wallkill, New

York, commenced this civil rights action pursuant to 42 U.S.C. § 1983 ("§ 1983").  An

Amended Complaint (Dkt. 7) ("First Amended Complaint"), was filed December 17,

2012.  Plaintiff alleges Defendants, employees of New York State Department of

Corrections and Community Supervision ("DOCCS"), violated Plaintiff's rights under the

Eighth and Fourteenth Amendments by failing to protect him from repeated assaults

while housed in Five Points Correctional Facility ("Five Points" or "the correctional

facility"), in Romulus, New York.

Plaintiff, a self-described "overt homosexual" whose "lifestyle" other inmates

"cannot handle," specifically alleges that Defendants have repeatedly refused Plaintiff's

numerous requests to be placed in voluntary protective custody, instead maintaining

---

[1] Although Defendants' motion to revoke Plaintiff's *in forma pauperis* status and Plaintiff's motions to compel and for an extension of time to file exhibits are nondispositive, whereas Defendants' motion for summary judgment is dispositive, all four motions are addressed in this combined Report and Recommendation/Decision and Order in the interest of judicial economy.

Plaintiff was properly placed in general prison population at Five Points which is fully "double-bunked" with two inmates in each general prison population cell. According to Plaintiff, his placement in Five Points' general prison population's double-bunked cells forced Plaintiff to share a cell with other inmates who either were homophobic and physically assaulted Plaintiff, or also were homosexual and sexually assaulted Plaintiff. In an Order filed April 24, 2014 (Dkt. 35), District Judge Arcara adopted the undersigned's Report and Recommendation filed March 27, 2014 (Dkt. 32), which, *inter alia*, recommended granting Plaintiff's request for a temporary restraining order directing Defendants not deny Plaintiff's future requests to be placed in voluntary protected custody to protect Plaintiff from a risk of serious harm which Defendants conceded was known. At oral argument on September 3, 2014 (Dkt. 47), Plaintiff orally moved for appointment of counsel, which the undersigned granted, with Glenn Pincus, Esq. ("Pincus"), being appointed as Plaintiff's counsel by Order filed September 30, 2014 (Dkt. 48).

On July 28, 2015, Defendants moved to revoke Plaintiff's *in forma pauperis* ("IFP") status (Dkt. 57) ("IFP Revocation Motion"), filing in support a Memorandum of Law (Dkt. 57-1) ("Defendants' IFP Revocation Memorandum"), and the Declaration of Assistant Attorney General ("AAG") Christopher L. Boyd (Dkt. 57-2) ("Boyd Declaration – IFP Revocation Motion"), with exhibits A through H (Dkt. 57-3) ("Boyd Declaration Exh(s). __"). In opposition to the IFP Revocation Motion, Plaintiff filed on August 21, 2015, a *pro se* letter (Dkt. 59) ("Plaintiff's *Pro Se* Response Opposing IFP Revocation Motion"), and on August 28, 2015, the Answering Affirmation of Glenn Pincus, Esq.

(Dkt. 60) ("Pincus Affirmation – IFP Revocation Motion"), attaching a copy of Plaintiff's *Pro Se* Response Opposing IFP Revocation Motion as Exh. A.

On September 1, 2015, Plaintiff filed a motion to compel discovery (Dkt. 61) ("Motion to Compel"), attaching in support the Declaration of Glenn Pincus (Dkt. 61-1) ("Pincus Declaration – Motion to Compel"), with exhibit A (Dkt. 61-2) ("Plaintiff's Exh. A"). On September 10, 2015, Plaintiff filed a *pro se* motion seeking an extension of time in which to file exhibits in further opposition to Defendants' IFP Revocation Motion (Dkt. 62) ("Motion to Extend Time to File"). On September 11, 2015, Defendants filed the Reply Memorandum of Law in Support of Defendants' Motion to Revoke Plaintiff's IFP Status (Dkt. 63) ("Defendants' Reply – IFP Revocation Motion"), seeking to strike any document filed by Plaintiff *pro se*. On September 30, 2015, Defendants filed the Memorandum of Law in Opposition to Plaintiff's Motion to Compel (Dkt. 67) ("Defendants' Response – Motion to Compel"), attaching the Declaration of AAG Christopher L. Boyd (Dkt. 67-1) ("Boyd Declaration – Motion to Compel").

With leave of the court, a further amended complaint was filed January 5, 2016 (Dkt. 74) ("Second Amended Complaint"),[2] asserting six claims for relief against Five Points Deputy Superintendent of Administration ("Five Points Administration Deputy"), Defendants Corrections Officer Brown ("Brown"), Corrections Sergeant S. Carpenter ("Carpenter"), Deputy Superintendent for Security John C. Colvin ("Colvin"), DOCCS Counselor Michael Donohue ("Donohue"),[3] DOCCS Commissioner Brian Fischer ("Fischer"), Deputy Superintendent of Programs Jones ("Deputy Jones"), Corrections Sergeant Jones ("Sergeant Jones"), Corrections Lieutenant Marketos ("Marketos"),

---

[2] The Second Amended Complaint initially was filed December 30, 2015 (Dkt. 72), but was refiled on January 5, 2016, to correct an electronic filing error.
[3] Donohue's name is also spelled in the Complaint as "Donahue," and it is not clear which is correct.

DOCCS Director of Movement and Control/Inmate Movement/Housing Albert Prack ("Prack"), DOCCS Nurse Sandifur ("Sandifur"),[4] Five Points Superintendent Michael Sheahan ("Sheahan"), Corrections Officer Sheldon ("Sheldon"), Corrections Sergeant Robert Shields ("Shields"),[5] and Corrections Sergeant Daniel Walawender ("Walawender").  Plaintiff's claims include (1) failure to protect and deliberate indifference against Defendants Brown, Carpenter, Colvin, Donohue, Fischer, Prack, and Sheahan.  Second Amended Complaint ¶¶ 168-186 ("First Claim"); (2) unlawful discrimination against Defendants Brown, Colvin, Fischer, Prack, Sheahan, Shields, and Walawender, id. ¶¶ 187-244 ("Second Claim"); (3) failure to provide adequate medical treatment against Defendant Shields, id. ¶¶ 245-50 ("Third Claim"); (4) negligent supervision of subordinate Defendants against Defendants Fischer and Sheahan, id. ¶¶ 251-61 ("Fourth Claim"); (5) conspiracy, retaliation, and maintaining a policy of cruel and unusual punishment against Defendants Carpenter, Colvin, Donohue, Deputy Jones, Prack, and Sheahan, id. ¶¶ 262-75 ("Fifth Claim"); and (6) excessive force, retaliation, and discrimination against Defendants Five Points Administration Deputy, Carpenter, Colvin, Donohue, Jenkins, Deputy Jones, Sergeant Jones, Marketos, Sandifur, Sheahan, Sheldon, and White.  Id. ¶¶ 276-92 ("Sixth Claim").

    In lieu of an answer to the Second Amended Complaint, Defendants filed on May 20, 2016, a motion for summary judgment (Dkt. 84) ("Summary Judgment Motion"), asserting Plaintiff failed to exhaust available administrative remedies as to each of his claims for relief.  The Summary Judgment Motion is supported by the attached

---

[4] Sandifur's name is also spelled in the Second Amended Complaint as "Sandifer" and it is not clear which spelling is correct.
[5] Shields is sometimes referred to as "Shielos."  See, e.g., Dkt. 25 at 3.

Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Dkt. 84-1) ("Defendants' Summary Judgment Memorandum"), the Statement of Undisputed Facts (Dkt. 84-2) ("Defendants' Statement of Facts"), the Declaration of Jeffrey Hale (Dkt. 84-3) ("Hale Declaration"), and the Declaration of Mandi Schultz (Dkt. 84-4) ("Schultz Declaration").  On August 23, 2016, Plaintiff filed his Response to Motion for Summary Judgment (Dkt. 95) ("Plaintiff's Summary Judgment Response").  On September 6, 2016, Defendants filed the Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Dkt. 96) ("Defendants' Summary Judgment Reply"), attaching the Declaration of AAG Christopher L. Boyd (Dkt. 96-1) ("Boyd Declaration – Summary Judgment"), and exhibit A (Dkt. 96-2) ("Defendants' Summary Judgment Exhibit A").  Oral argument was deemed unnecessary.

Based on the following, Defendants' IFP Revocation Motion is GRANTED; Plaintiff's Motion to Compel is DENIED; Plaintiff's Motion to Extend of Time to File is DENIED; Defendants' Summary Judgment Motion should be DENIED.

## FACTS[6]

Plaintiff Michel Toliver ("Plaintiff" or "Toliver"), is a physically disabled homosexual male who uses a walker to ambulate short distances, requires a wheelchair for longer distances, and has been prescribed pain and seizure medications as well as physical therapy.[7]  After being sentenced in connection with a the criminal conviction for which Plaintiff was incarcerated at all times relevant to this action, Plaintiff was placed in the custody of New York State Department of Corrections and Community Supervision ("DOCCS"), and transferred to Downstate Correctional Facility ("Downstate"), a DOCCS

---

[6] Taken from the pleadings and motion papers filed in this action.
[7] The precise nature of Plaintiff's physical disability is not revealed in the record.

"reception" correctional facility where Plaintiff with assigned correctional counselors who reviewed Plaintiff's records while Plaintiff was housed in Downstate's infirmary because Plaintiff's medical chart indicated that Plaintiff has a seizure disorder and other medical issues rendered Plaintiff unable to maneuver the stairs within Downstate.  The corrections counselor indicated in an interview sheet that was forwarded to DOCCS movement and control/inmate housing office in Albany that Plaintiff is "(a) homosexual overt; (b) uses a wheelchair/walker; (c) is housed in the infirmary; (d) victim of sexual abuse; (e) cannot be double bunked."  Second Amended Complaint ¶¶ 127-28.  Plaintiff was also advised by the corrections counselor that it would be requested that Plaintiff be housed in a "Regional Medical Facility," but that despite such request, Defendant Prack classified Plaintiff to be housed in a maximum security correctional facility even though Plaintiff had been sentenced only to 2 1/3 to 7 years with 2 years already having been served before Plaintiff's classification was completed.  *Id.* ¶ 128.  Plaintiff was then placed in Elmira Correctional Facility ("Elmira"), where Plaintiff was denied clearance for the general prison population and admitted to the infirmary.  At Elmira, several DOCCS staff members, including a DOCCS counselor, spoke with the medical staff and assured Plaintiff would be placed in a regional medical unit.

Despite the recommendation that Plaintiff could not be double-bunked, and assurances that Plaintiff would be housed in a regional medical unit, on October 28, 2010, Plaintiff was transferred from Elmira to Five Points Correctional Facility ("Five Points" or "the correctional facility"), where Plaintiff was housed in the general prison population with inmates assigned two to a cell, *i.e.*, "double-bunked."  It is the responsibility of the DOCCS Deputy Superintendent of Security to conduct a risk

assessment to determine each inmate's eligibility, suitability, and compatibility for double-cell living and "victim prone" inmates, defined as "[i]nmates currently in 'voluntary protective custody' or 'involuntary protective custody' status . . . " as well as "any inmate with a pattern of being victimized by other inmates resulting in serious physical injury or sexual abuse," are generally excluded from consideration for double-bunking.  7 N.Y.C.R.R. § 1701.5 ("§ 1701.5").  Plaintiff, a physically disabled homosexual male, maintains he never should have been double-bunked in Five Points general prison population because he is an overt homosexual and has been assigned to share a cell either with homophobic inmates who physically assault him, or other homosexual inmates who sexually assaulted him.

**Cellmate Webster**

On October 28, 2010, Plaintiff was assigned to Cell # 432 ("Cell 432"), already occupied by inmate Webster ("Webster"), a member of the "Bloods" gang, who immediately declared that Plaintiff was not permitted to stay in Webster's cell.  Plaintiff advised an unidentified housing unit officer of the problem with Webster.  The unidentified housing unit officer permitted Plaintiff to relay the complaint to Defendant Sergeant John Doe, who informed Plaintiff he would have to remain in Cell 432 with Webster, and Plaintiff was escorted back to Cell 432 where Webster directed verbal and physical threats toward Plaintiff, demanding Plaintiff "get out of [Cell 432]" and slapping Plaintiff across the face.  Second Amended Complaint ¶ 55.  To each corrections officer who walked past Cell 432, Plaintiff reported he felt his life was in danger if he remained in Cell 432 with Webster, but all of Plaintiff's attempts to be transferred to a different cell were unsuccessful.  That night, Plaintiff, out of fear, did not sleep and Webster threw

soup and cold water on Plaintiff.  Webster also forced Plaintiff to wash Webster's dirty

socks, underwear, sweatshirts and shorts, and to scrub the toilet, sink, and shower late

into the night and early morning.  At 8:00 A.M. the next day, October 29, 2010, Webster

informed that if Plaintiff were still in Cell 432 when Webster returned from breakfast,

Webster would "beat the shit out of [Plaintiff]."  Second Amended Complaint ¶ 59.

Plaintiff's pleas to every passing corrections officer were to no avail.  When Webster

returned to Cell 432, Webster punched Plaintiff in the face, knocking him to the ground.

A passing corrections officer witnessed the incident and removed Plaintiff from Cell 432.

**Voluntary Protective Custody**

Following the altercation with Webster, Plaintiff was permitted to speak to

another area sergeant who witnessed Plaintiff's bruised face and placed Plaintiff' in

voluntary protective custody in Cell # 30 ("Cell 30") without a cellmate.  On the

Voluntary Protective Custody Status Consideration Form (Dkt. 25 at 3) ("Protective

Custody Form"), completed on October 29, 2010, Shields wrote in Section A that

Plaintiff approached the Five Points staff requesting protective status, and wrote in

Section B that Plaintiff is an "overt homosexual" who "thought he could do double bunk

but his current Bunkie couldn't handle his lifestyle.  He feels due to his lifestyle and

current medical condition he couldn't defend himself in general population."  *Id.*; Second

Amended Complaint ¶ 90.  On November 5, 2010, Defendant Colvin officially authorized

Plaintiff's placement in protective custody.  Protective Custody Form.

**Cellmate Payne**

After three or four weeks alone in Cell 30, Defendant Brown, without any warning,

relocated Plaintiff to Cell # 50 ("Cell 50"), in Five Points' general prison population

where Plaintiff was double-bunked with inmate Payne ("Payne"), who, like Plaintiff, is homosexual.  Plaintiff protested that his assignment to Cell 50 with Payne placed Plaintiff in harm's way because Payne had previously made sexual advances toward Plaintiff, despite the fact that Plaintiff was not interested in Payne, but Brown responded only that Plaintiff would have to find a way to get along with Payne.  One or two days later, Plaintiff awoke in his assigned bottom bunk in Cell 50 to Payne sitting at the table watching Plaintiff despite Plaintiff's requests that Payne stop.  While Payne was preparing to use the shower located inside Cell 50, Payne made sexual advances toward Plaintiff despite Plaintiff's repeated requests for Payne to stop.  Plaintiff's requests to Defendant Brown to be removed from Cell 50 and to be permitted to speak with a sergeant were ignored.  On Thanksgiving Day 2010, Plaintiff awoke in Cell 50 and found Payne's sperm on his shirt and neck.  After Plaintiff complained to the unit officer, Plaintiff was removed from Cell 50 and taken to meet with the area sergeant who gave Plaintiff a towel with alcohol with which to clean up, and then temporarily placed in a holding cell, but because the area sergeant was not authorized to reassign Plaintiff, Plaintiff was asked by the area sergeant to choose between returning to Cell 50 with Payne until the regularly assigned hosing sergeant returned, or being taken by force to "the box" and subjected to an inmate misbehavior report for refusing to double-bunk.  The area sergeant further advised Plaintiff that in the box, Plaintiff likely would be double-bunked with "someone who hates faggots as opposed to wanting to fuck you. It's your choice."  Second Amended Complaint ¶ 71.  Plaintiff thus was forced to return to Cell 50 with Payne.  Upon returning to Cell 50, Plaintiff discovered that his bags, which had been packed in anticipation of moving, were open, and that Payne had

urinated on Plaintiff's clothes and left a love letter and handmade sweetheart greeting card.  The following day, Plaintiff's request to speak with the psychiatrist, Dr. York ("Dr. York"), was granted.  After Plaintiff informed Dr. York of the recent events, Dr. York had Plaintiff reassigned from Cell 50 to Cell # 47 ("Cell 47"), in protective custody and, thus, without a cellmate.

**Cellmate Ingraham**

Several days after being assigned to Cell 47, inmate Ingraham ("Ingraham"), a member of the Bloods gang, became Plaintiff's cellmate.  On a daily basis, Ingraham demanded Plaintiff give him Plaintiff's breakfast and lunch, and wash Ingraham's clothes, banned Plaintiff from using the bathroom, turned on the lights and made noise whenever Plaintiff was present, and read Plaintiff's mail.  Multiple grievances filed by Plaintiff regarding Ingraham were to no avail.  Plaintiff remained double-bunked with Ingraham until Ingraham wrote Five Points' administration that Plaintiff could remain in Cell 47 with Ingraham only if DOCCS paid Ingraham; otherwise, Plaintiff would become a "poster victim."  Second Amended Complaint ¶ 79.  Ingraham was then removed from Cell 47.

**Cellmate Desnoyers**

Several days following Ingraham's departure from Cell 47, inmate Desnoyers ("Desnoyers"), a homophobic member of the "Alien Nation" gang, was moved in as Plaintiff's new cellmate.  Desnoyers immediately began threatening to kill Plaintiff who immediately notified the Five Points staff of the threats and wrote 20 letters to Defendants Colvin and Sheahan regarding the threats and Five Points staff's refusal to move Plaintiff.  In addition to physical threats to harm or kill Plaintiff, Desnoyers also

flicked cigarette ashes onto Plaintiff, threw cigarette butts on Plaintiff's bed, and spat on Plaintiff.  Defendant Brown, when advised of the problems Plaintiff had with Desnoyers, responded that Desnoyers would not be moving out.  Even after Plaintiff complained that Desnoyers had thrown feces on Plaintiff while he slept, Brown took no action to move Plaintiff or Desnoyers from Cell 47.  Eventually, Desnoyers wrote Five Points administration advising that Desnoyers was a member of the Alien Nation and that if neither Desnoyers nor Plaintiff was removed from Cell 47 within 24 hours, Desnoyers "would kill in the name of his Nation."  *Id.* ¶ 86.  Immediately thereafter, Desnoyers was transferred from Cell 47.

**Unidentified Cellmate**

Several days after Desnoyers' removal from Cell 47, an unidentified inmate became Plaintiff's cellmate for only a few hours as the cellmate immediately punched and kicked Plaintiff.  The physical altercation was witnessed by an officer and the cellmate was removed from Cell 47, yet denied Plaintiff's request for medical attention for Plaintiff's visible injuries and also threatened Plaintiff not to report the incident.

**Administrative Complaint**

By letter to Five Points Administration dated January 13, 2011 ("Administrative Complaint"), Plaintiff complained of being double-bunked despite the threats and abuse encountered from his various cell-mates.  Plaintiff maintains that after submitting the Administrative Complaint, Defendant Walawender removed Plaintiff from his cell and spoke to Plaintiff "'privately in a closed room."  Second Amended Complaint ¶ 162. According to Plaintiff, Walawender advised Plaintiff his claims would not be investigated and that "[t]he Deputy of Security and Superintendent have all your complaints you are

going to remember that none of this shit happened in our facility . . . ." *Id.* Plaintiff alleges that despite his protests, Walawender covered up Plaintiff's complaints regarding the assaults and being forced to double-bunk by writing on paperwork that none of the events about which Plaintiff had complained occurred at Five Points. *Id.* at 162-63. By Memorandum to Lt. Levac dated January 19, 2011 ("January 19, 2011 Memorandum") (Dkt. 96-2 at 2), Walawender reports interviewing Plaintiff in the 12B hearing room on January 19, 2011, regarding Plaintiff claims of being raped and assaulted by his "Bunkie." According to Walawender, during the interview, Plaintiff denied having been assaulted by his Bunkie, asserting the assault did not happen at Five Points but at Rikers. *Id.* Walawender further reported Plaintiff wrote the "Dep" so he could be placed in a single cell because he is "an overt homosexual" and does not want a Bunkie, but that Plaintiff did not have any problems with his cell mate. *Id.* By letter to Five Points Deputy Superintendent Zenzen ("Zenzen"), dated January 19, 2011 ("January 19, 2011 Letter") (Dkt. 96-2 at 3), Plaintiff complains of having been raped and assaulted at Five Points and requests protective custody because of the repeated assaulted Plaintiff has endured while double-bunked with gang members and other inmates. In another Memorandum dated January 25, 2011 ("January 25, 2011 Memorandum") (Dkt. 25 at 4; Dkt. 96-2 at 1), Colvin addressed Plaintiff's Administrative Complaint, responding that "Sgt. Walawender informs me that you told him that none of the issues in your complaint occurred at Five Points and that the purpose of this letter was to let staff know that you do not want to double bunk."

On February 22, 2011, Plaintiff was transferred from Five Points to Shawangunk Correctional Facility.

**Protective Custody and Crisis Unit at Five Points**

On January 30, 2013, one week after Defendants were served with Plaintiff's First Amended Complaint, Plaintiff was transferred back to Five Points and placed in protective custody in Cell # 26 ("Cell 26") in Five Points' protected custody unit.  On February 1, 2013, Plaintiff was interviewed by Defendant Donohue who stated Plaintiff had not been seriously threatened, advising Plaintiff would be returned to Five Points' general population, and denied Plaintiff's repeated requests to remain in protective custody.  On February 4, 2013, Plaintiff was removed from protective custody to the general prison population where Plaintiff was placed in Cell # 49 ("Cell 49").  Plaintiff's repeated requests to the housing unit supervisor, Defendant Carpenter, for protective custody were denied.  From February 12 to 14, 2013, Plaintiff was placed in Five Points' "crisis unit for suicide prevention" pursuant to a physician's order based on Plaintiff's complaints of being unable to deal with his best friend's suicide and being forced to reside in the general prison population.

On February 15 and 16, 2013, Plaintiff complained of chest pains, but then informed Five Points medical staff the pain had subsided.  On February 17, 2013, Defendant Carpenter told Plaintiff to report to Five Points' infirmary despite Plaintiff's assurances that he did not need to go.  Plaintiff was taken to the infirmary where Defendant Sergeant Jones was the infirmary supervisor on duty, and Defendant Sandifur was the staff nurse on duty.  At the infirmary, Defendant Marketos threatened Plaintiff with bodily harm if Plaintiff refused to be taken to a local hospital; Plaintiff was then taken against his will by EMS (emergency medical service) to the hospital.[8]  While

---

[8] Neither the precise reason for taking Plaintiff to the hospital, nor the name of the hospital is in the record.

Plaintiff was at the hospital, a search of his cell revealed an altered toothbrush for which Plaintiff was charged in an inmate misbehavior report ("Misbehavior Report"), issued by Defendant Sheldon with possession of a weapon.  In connection with the Misbehavior Report, upon returning from the hospital, Plaintiff was placed in Five Points' Special Housing Unit ("SHU").

On March 23, 2013, Plaintiff, sitting in his wheelchair, shackled, chained, and handcuffed, was escorted to the mental health unit by Defendants Jenkins and White who expressed frustration that their lunch break had been interrupted and physically assaulted Plaintiff while on the elevator by choking Plaintiff until he lost consciousness and then repeatedly slapping Plaintiff's face to wake him.  Plaintiff reported the assault to his mental health clinician, "Mr. Gibbons," who alerted DOCCS staff and Colvin. Although Plaintiff was interviewed by Inspector General Trevos ("Trevos") regarding the assault, Plaintiff continued to be escorted by Jenkins and White who, on May 1, 2013, kicked Plaintiff in the buttocks.  On May 15, 2013, Defendant Deputy Jones rendered a decision on the Misbehavior Report finding Plaintiff guilty on the weapon possession charge, imposing six months loss of good time and privileges and confinement in SHU.

On March 11, 2016, Plaintiff was discharged from DOCCS custody.

**Administrative Remedies**

Plaintiff maintains that throughout the above incidents, he directed requests to Defendants Colvin, Sheahan and Carpenter for placement in protective custody, but Colvin responded to each request that Plaintiff should write to Defendant Correctional Counselor Donohue.  Second Amended Complaint ¶ 103.  When Plaintiff complied, Donohue repeatedly denied the requests.  *Id.*  Plaintiff maintains he filed 23 grievances

regarding the incidents, for which no response was ever received, and requested a hearing with respect to the grievances, but the request was denied.  *Id.* ¶ 104. According to Plaintiff, many of the grievances and complaints were never officially filed or assigned administrative grievance numbers.  *Id.* ¶ 117.  Plaintiff also filed 25 complaints and appeals of his denied grievances to DOCCS Central Office Review Committee ("CORC"), each time receiving the same response, *i.e.*, "that this problem should be handled at the facility level," despite the fact that with each appeal, Plaintiff advised of his concern for his safety in the general prison population.  *Id.* ¶ 105.

## DISCUSSION

1.     **IFP Revocation Motion**

Defendants move to revoke Plaintiff's IFP status for violation of the "three strikes rule," arguing that Plaintiff has had six previous actions[9] dismissed on the grounds set forth in 28 U.S.C. § 1915(g) prior to filing the instant action.  Defendants' IFP Revocation Memorandum at 2.  In opposition, Plaintiff maintains that the six dismissed actions on which Defendants' rely in support of their IFP Revocation Motion are not properly considered "strikes" under the three strikes rule, Pincus Affirmation – IFP Revocation Motion ¶¶ 8-13, and public policy dictates the motion be denied.  *Id.* ¶ 14. In further support of the IFP Revocation Motion, Defendants reiterate that the dismissal of each of Plaintiff's previously filed six cases on which Defendants rely supports revoking Plaintiff's IFP status.  Defendants' Reply – IFP Revocation Motion at 3-10.

As relevant, the Prison Litigation Reform Act of 1995 ("PLRA"), provides that an inmate may not proceed *in forma pauperis* ("IFP"), "if the prisoner has, on three or more

---

[9] Copies of the relevant court docket or of the order dismissing each of the six cases cited by Defendants in support of their IFP Revocation Motion are filed as Boyd Declaration Exhs. C through H.

prior occasions, while incarcerated or detained in any [correctional][10] facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief can be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g) ("three strikes provision"). [11]   The "imminent danger" exception to the three strikes rule, however, provides no basis to avoid the three strikes rule based on past harm. *Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002) ("We agree with our sister circuits that § 1915(g) allows prisoners to escape the three strikes rule only if 'the prisoner *is* under imminent danger of serious physical injury.'" (emphasis in original) (quoting 28 U.S.C. § 1915(g)).  In the instant case, because Plaintiff has been released from DOCCS custody, Plaintiff may not rely on the imminent danger exception to avoid the three strikes rule's application.  Accordingly, the court considers whether at least three of Plaintiff's previously dismissed actions qualify under § 1915(g) as strikes so as to require revocation of Plaintiff's IFP status.

The court's determination whether the dismissal of an earlier action filed by Plaintiff requires the court to construe § 1915(g).  *See Tafari v. Hues*, 473 F.3d 440, 442 (2d Cir. 2007) (considering question of whether prior dismissed action constitutes a strike under § 1915(g) to be a matter of statutory construction).  "'Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of the language accurately expresses the legislative purpose.'"  *Id.* (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)).  "A

---

[10] Unless otherwise indicated, all bracketed material has been added.

[11] Although Plaintiff has been released from DOCCS custody, because he was an inmate when the action was commenced, the action remains governed by the PLRA, including the three strikes provision. *Harris v. City of New York*, 607 F.3d 18, 21-22 (2d Cir. 2010) (holding PLRA's three strikes provision applied despite a subsequent release from prison where the action was filed while the plaintiff was incarcerated).

dismissal triggers § 1915(g) only if the action or appeal is 'frivolous,' 'malicious,' or 'fails to state a claim upon which relief may be granted.'" *Id.* (quoting 28 U.S.C. § 1915(g)). Significantly, "[t]he phrase 'fails to state a claim upon which relief may be granted' is an explicit reference to Fed.R.Civ.P. 12(b)(6) . . . ." *Id.* (quoting Fed.R.Civ.P. 12(b)(6), and citing *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005) ("[T]he phrase 'fails to state a claim on which relief may be granted,' as used elsewhere in § 1915, 'parallels the language of Federal Rule of Civil Procedure 12(b)(6).'")). For purposes of § 1915(g), a case is considered malicious "'if it was filed with the intention or desire to harm another.'" *Id.* Further, "[a] frivolous action advances 'inarguable legal conclusion[s]' or 'fanciful factual allegations.'" *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "Thus, the term 'frivolous' refers to the ultimate merits of the case." *Id.* (observing the premature filing of an interlocutory appeal was a jurisdictional defect that had nothing to do with the merits of the underlying claim and, as such, did not constitute a strike under § 1915(g)). Here, because there is no indication that any of Plaintiff's prior cases was dismissed after being deemed to have been filed with the intention of harming any defendant, and Defendants do not argue as much, the court need consider only whether any of Plaintiff's previous cases were dismissed as frivolous or for failure to state a claim for which relief may be granted.

The first case Defendants maintain qualifies under § 1915(g) as a strike, *Toliver v. Dept. of Corr.*, No. 07 Civ. 3017, Dkt. 3 (KMW), 2007 U.S. Dist. LEXIS 103110, (S.D.N.Y. Apr. 16, 2007) (Boyd Declaration Exh. C) ("First Alleged Strike"), was a "commonplace slip and fall" which the court found failed to state a claim for which relief can be granted. *See Toliver v. Perri*, 2011 WL 43461 at * 2 (S.D.N.Y. Jan. 6, 2011)

(considering same action as dismissed for failure to state a claim under Rule 12(b)(6) and, thus, a strike under § 1915(g)).  Accordingly, Defendants' assertion that the First Alleged Strike is a strike under the three strikes rule is correct.

Both the second and third cases on which Defendants rely, including *Toliver v. Dept. of Corr.*, No. 07-4539, Dkt. 4 (S.D.N.Y. Sept. 11, 2007) (Boyd Declaration Exh. D) ("Second Alleged Strike"), and *Toliver v. New York City Police Dep't.*, No. 07-CV-5877, Dkt. 4 (S.D.N.Y. Sept. 11, 2007) (Boyd Declaration Exh. E) ("Third Alleged Strike"), were dismissed not for failure to state a claim but, rather, for failing to file an amended complaint within 60 days as specified in an earlier decision.  Although Defendants argue the nature of these dismissals is more akin to dismissals for failure to state a claim given that the underlying orders providing Plaintiff 60 days in which to file amended complaints also dismissed the original complaints for failure to state a claim, the ultimate dismissal of an action for failure to file an amended complaint has been held to be a dismissal for failure to prosecute which is not among the grounds listed as strikes under § 1915(g).  *See Toliver v. Perri*, 2011 WL 43461 at * 2 (S.D.N.Y. Jan. 6, 2011) (denying Defendants' motion to revoke Plaintiff's IFP status for violation of § 1915(g)'s three strikes rule because dismissal of actions based on Plaintiff's failure to file amended complaints after original complaints were dismissed for failure to state a claim was "characterized as resting on a failure to prosecute a pending action rather than a failure to state a claim").  Accordingly, The Second and Third Alleged Strikes are not strikes under § 1915(g).

*Toliver v. New York District Atty.*, No. 10-CV-07711, Dkt. 3, (S.D.N.Y. Oct. 8, 2010) (Boyd Declaration F) ("Fourth Alleged Strike"), was dismissed because it was

duplicative of a previous action filed by Plaintiff.  Defendants maintain such dismissal amounts to a dismissal as frivolous and malicious under § 1915(g).  Defendants' IFP Revocation Memorandum at 3 n. 1 (citing cases).  Defendants do not explain how the duplicative filing of the Fourth Case is malicious.  *See Tafari*, 473 F.3d at 442 (stating that for purposes of § 1915(g), a case is considered malicious if it was filed with the intention or desire to harm another. (internal quotation marks omitted).  The court thus addresses whether the filing of the Fourth Alleged Strike, later dismissed as duplicative, was frivolous.

Although dismissal of an action as duplicative of another action is not among the specifically enumerated strikes under § 1915(g), and the Second Circuit has not addressed whether the dismissal of an action solely on the basis that it is duplicative of an earlier action constitutes a strike for purposes of the three strikes rule, the Second Circuit's instruction that "the term 'frivolous' refers to the ultimate merits of the case" strongly implies that the dismissal of an action merely because the action is duplicative of an earlier action is not, by itself, sufficient to qualify as a strike under § 1915(g); rather, the earlier action must have been dismissed on the merits.  *Tafari*, 473 F.3d at 442 ("A frivolous action advances inarguable legal conclusions or fanciful allegations. Thus, the term 'frivolous' refers to the ultimate merits of the case."  (internal quotation marks and citations omitted)).  This is consistent with the cases referenced by Defendants, Defendants IFP Revocation Memorandum at 3 n. 1, in which the duplicative actions filed by the plaintiff were counted under § 1915(g) as strikes based not solely on the fact that such actions were duplicative, but that they were duplicative of actions that were dismissed under Rule 12(b)(6) for failing to state a claim for which

relief could be granted.  *See Dove v. City of Binghamton*, 2014 WL 5308152, at * 2

(N.D.N.Y. Oct. 16, 2014) (action dismissed as duplicative of earlier action that was

dismissed because defendants were entitled to absolute immunity constituted strike

under § 1915(g)); and *Phelan v. Karandy*, 2011 U.S. Dist. LEXIS 153107, at * 6

(N.D.N.Y. Dec. 5, 2011) (counting as strike action that was duplicative of earlier action

that "was previously dismissed for lacking an arguable basis in law or fact.").  In another

case on which Defendants rely, *Muhammad v. Healy*, 2008 WL 2945350, at *

1(S.D.N.Y. July 28, 2008), the court does not discuss whether the previous cases were

dismissed as malicious, frivolous or failing to state a claim.  *Compare Martinez v. United

States*, 812 F.Supp.2d 1052, 1057 (C.D.Cal. 2010) (considering dismissal of prior action

determined to be duplicative of an earlier action dismissed on summary judgment as

neither frivolous nor malicious under § 1915(g)).

    In the instant case, Defendants do not explain the outcome of the case of which

the court found the Fourth Alleged Strike duplicative, *i.e.*, the outcome of "10 Civ. 3165,"

Defendants IFP Revocation Memorandum at 3, nor has the court's research located

such case.  It therefore is not possible to determine whether the Fourth Alleged Strike

was dismissed as duplicative of the earlier case (1) which was without merit, (2) on

which Plaintiff prevailed, (3) on which Plaintiff did not prevail yet did not fail to state a

claim upon which relief could be granted, or (4) which action remains pending.  Absent

this information, the court is unable to conclude that the Fourth Alleged Strike

constitutes a strike under § 1915(g).  *Tafari*, 473 F.3d at 442.

    With regard to the Fifth Alleged Strike, two cases filed in the Southern District of

New York were consolidated for pre-trial matters, including *Toliver v. City of New York*,

No. 10 Civ. 3165 ("10 CV 3165"), and *Toliver v. City of New York*, No. 10 Civ. 6619 ("10 CV 6619"). *Toliver v. City of New York*, 2011 WL 4964665 (S.D.N.Y. Oct. 18, 2011) (Boyd Declaration Exh. G). Although consolidated for pretrial matters, one of the separately filed actions, 10 Civ. 6619, was dismissed in its entirety for failure to state a claim upon which relief may be granted, 2011 WL 4964665, at * 11, whereas in the other action, 10 Civ. 3165, only some of the claims were dismissed with the remaining claims permitted to proceed. *Id.*

A partial dismissal does not constitute a strike for purposes of the three strikes rule. *Gillard v. Canfield*, 2013 WL 5276546, at * 3 (W.D.N.Y. Sept. 17, 2013) (citing *Read v. Bill*, 2011 WL 6148635, at * 2-3 (W.D.N.Y. Oct. 21, 2011) (citing *Tafari v. Hues*, 539 F.Supp.2d 694, 701-02 (S.D.N.Y. 2008))). Nevertheless, where, as with the Fifth Alleged Strike, two cases commenced by separate complaints are combined for pretrial matters, and one of the complaints is dismissed for failure to state a claim, the dismissal is treated as a strike pursuant to § 1915(g). *See Southerland v. Patterson*, 2012 WL 208105, at * 1 n. 1 (S.D.N.Y. Jan. 23, 2012) (counting two actions dismissed in their entirety as two strikes under § 1915(g) despite fact cases were consolidated into one action because the plaintiff filed two separate complaints). Accordingly, the dismissal of 10 Civ. 6619, although consolidated with 10 Civ. 3165 in the Fifth Alleged Strike, constitutes a strike for purposes of the three strikes rule.

Defendants argue that *Toliver v. City of New York*, No. 1:12-CV-00964 (Dkt. 8) (S.D.N.Y. Mar. 13, 2012) (Boyd Declaration Exh. H) ("Sixth Alleged Strike"), was dismissed for failure to state a claim. Defendants' IFP Revocation Memorandum at 4. In opposition, Plaintiff maintains that the dismissal does not count as a strike because

the dismissal was with leave to amend which is not among § 1915(g)'s enumerated

strikes.  Pincus Affirmation – IFP Revocation Motion ¶ 12.  In further support of

dismissal based on three strikes, Defendants argue the Sixth Alleged Strike was not

dismissed with leave to file an amended complaint but, rather, was dismissed pursuant

to *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) ("*Heck*"), because the malicious

prosecution claim asserted by Plaintiff, if successful, would necessarily imply that

Plaintiff's underlying conviction was invalid, such that the action would be futile unless

the conviction was first overturned.  Defendants' Reply – IFP Revocation Motion at 8-9.

In the Sixth Alleged Strike, Plaintiff asserted a claim for malicious prosecution

pertaining to the conviction for which he was incarcerated when the instant action was

commenced.  Because the underlying conviction had not been overturned, the Sixth

Alleged Strike was "dismissed pursuant to *Heck* with leave to re-file the case if

[Plaintiff's] conviction is overturned."  Sixth Alleged Strike at 9.  In contrast to the

Second and Third Alleged Strikes which were dismissed only after Plaintiff failed to avail

himself of the opportunity provided by the court to file amended complaints, the Sixth

Alleged Strike was dismissed, albeit with leave for Plaintiff to commence a new action

should the underlying conviction be overturned.  Although the Second Circuit has yet to

hold a dismissal under *Heck* constitutes a strike under § 1915(g), District Courts within

the Second Circuit have consistently so held.  *See*, *e.g.*, *Read v. Bill*, 2012 WL

1444570, at * (W.D.N.Y. Apr. 4, 2012) (considering dismissal under *Heck*  a strike for

purposed of three strikes rule and citing *Hamilton v. Lyons*, 74 F.3d 99 (5th Cir. 1996));

*Parker v. Langelotti*, 2012 U.S. Dist. LEXIS 30551, at * 4-5 (W.D.N.Y. Mar. 7, 2012)

(holding inmate plaintiff's claim for damages for which judgment in the plaintiff's favor

would necessarily imply the invalidity of the plaintiff's conviction in violation of *Heck*, requiring dismissal of the complaint for failure to state a claim for which relief could be granted and thus counted as a § 1915(g) strike); and *Alston v. F.B.I.*, 747 F.Supp.2d 28, 32 (D.D.C. 2010) ("A dismissal under *Heck* is considered a basis for assessing a 'strike' for purposes of 28 U.S.C. § 1915(g)). The Sixth Alleged Strike thus is a strike under § 1915(g).

Because the First, Fifth and Sixth Alleged Strikes are actual strikes under 28 U.S.C. § 1915(g), Plaintiff has accumulated three strikes prior to commencing this action, requiring revocation of his IFP status. The instant action should be stayed pending Plaintiff's payment of the $ 350 filing fee[12] no later than forty-five (45) days of any order adopting this report and recommendation. Should Plaintiff fail to pay the filing fee within the recommended forty-five day period, the Clerk of the Court should be directed to dismiss the Second Amended Complaint and to close the file.

The revocation of Plaintiff's IFP status based on the three strikes rule, however, does not also render Plaintiff ineligible for the counsel appointed on September 3, 2014. See 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel). *See also Orraca v. Augustine*, 2013 WL 5411703, at * 5 (W.D.N.Y. Sept. 26, 2013) (revoking *pro se* inmate plaintiff's IFP status under the three strikes rule, but denying plaintiff's motion for appointment of counsel as moot and without prejudice to renewal upon payment of the filing fee).

---

[12] An additional $ 50 administrative fee has been added to the cost of civil lawsuit filed in District Court after May 1, 2013, for a total fee of $ 400. Because the instant action was filed March 21, 2012, Plaintiff is not required to pay the additional $ 50. *Orraca v. Augustine*, 2013 WL 5411703, at *5, n. 7 (W.D.N.Y. Sep't. 26, 2013).

Because the revocation of Plaintiff's IFP status does not require the immediate dismissal of the instant action but, rather, permits Plaintiff time to pay the filing fee and avoid dismissal, the remaining pending motions are addressed.

## 2.    Motion to Compel

On September 1, 2015, Plaintiff moved pursuant to Fed.R.Civ.P. 37 ("Rule 37") to compel Defendants to provide discovery, asserting Defendants, despite providing some disclosures pursuant to Fed.R.Civ.P. 26 ("Rule 26") on June 9, 2015, at which time Defendants also commented they "believed" additional documents subject to disclosure remained in DOCCS's possession or control and would be produced upon its receipt from DOCCS, have failed to provide such additional documents or other discovery to Plaintiff, nor have Defendants requested an extension of time in which to make such disclosures.  Pincus Declaration – Motion to Compel ¶¶ 4-6.  In opposition, Defendants maintain Plaintiff has failed to comply with Rule 37(a)(1)'s requirement that a movant seeking to compel discovery certify "that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Defendants' Response – Motion to Compel at 2.  Nor has Plaintiff complied with Local Rule of Civil Procedure – W.D.N.Y. 7 ("Local Rule 7"), requiring a movant seeking to compel discovery file an affidavit detailing the sincere attempts to resolve the discovery dispute prior to moving to compel.  *Id.* at 2-3 (citing L.R.Civ.P.- W.D.N.Y. 7(d)(4)).  Defendants further maintain the Motion to Compel should be denied because Defendants have fully complied with all discovery obligations under Rule 26(a), *id.* at 3, and Plaintiff has failed to specify the additional documents Plaintiff seeks in a motion for production of documents pursuant

to Fed.R.Civ.P. 34 ("Rule 34).  *Id.* at 3-4.  Plaintiff has not replied in further support of his Motion to Compel.

Plaintiff's Motion to Compel is rendered fatal by Plaintiff's failure to indicate what attempts, if any, Plaintiff made to resolve the asserted discovery dispute prior to moving to compel.  *See Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94, 99-100 (S.D.N.Y. 1997) (denying motion to compel discovery where movant "violated the meet-and-confer requirements of the Federal Rules of Civil Procedure, the Local Rules, and this Court's Individual Practice Rules.").  Furthermore, although generally, a simply request for "production of all documents pertaining to a specified matter or issue" is sufficient under Rule 34, *see Donovan v. Mehlenbacher*, 652 F.2d 228, 230-31 (2d Cir. 1981) (a Rule 34 subpoena need not specify all particular items requested where all such items are not known, but may simply request production of all documents pertaining to a specified matter or issue), here, Plaintiff has not made any Rule 34 request for documents and tangible things; rather, Plaintiff's motion to compel is premised on the assertion that Defendants, despite initially stating they "believed" additional documents subject to disclosure were in DOCCS's possession and would be produced as they were received from DOCCS, have failed to produce any additional documents to Plaintiff.  *See Auther v. Oshkosh Corp.*, 2010 WL 1404125, at * 2 (W.D.N.Y. Mar. 30, 2010) (denying motion to compel mandatory discovery under Rule 26 where the plaintiffs sought additional information about 240 photographs produced by defendant and "other discovery mechanisms" were available to the plaintiffs seeking further information about the photographs).

Plaintiff's Motion to Compel is therefore DENIED.

### 3.     Motion to Extend Time to File

Despite being represented by appointed counsel, Plaintiff filed *pro se* his Motion to Extend Time to File seeking additional time in which to file exhibits pertaining to Defendants' IFP Revocation Motion, Motion to Extend Time to File at 1-2, and, alternatively, requests the court deny Defendants' IFP Revocation Motion.  *Id.* at 2-3.  In opposition, Defendants argue that because Plaintiff is represented by counsel, Plaintiff's *pro se* submissions should not be permitted or considered.  Defendants' Response – Motion to Compel at 4-5.  Plaintiff has not argued in further support of his Motion to Extend Time to File.

Courts within the Second Circuit have repeatedly held that a district court can reject *pro se* motions filed by a represented party.  *See*, *e.g.*, *Prestia v. Colvin*, 2015 WL 1417738, at ** 2-3 (N.D.N.Y. Mar. 27, 2015) (dismissing *pro se* filings in civil action where the plaintiff was represented by counsel).  Accordingly, Plaintiff's Motion to Extend Time to File is DENIED.

### 4.     Summary Judgment

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party.  *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  The party moving for summary judgment bears the burden of establishing the nonexistence of any

genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  "A fact is material if it 'might affect the outcome of the suit under governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."  *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof.  *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)).  Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."  *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

Defendants argue in support of summary judgment that Plaintiff has failed to exhaust available administrative remedies with regard to his claims, Defendants' Summary Judgment Memorandum at 4-7, and there is no excuse for Plaintiff's failure to exhaust. *Id.* at 7-8. In opposition, Plaintiff argues "his administrative remedies were exhausted to the extent that Defendant DOCCS permitted them to be," Plaintiff's Summary Judgment Response at 5, given that in practice, DOCCS's Inmate Grievance Program ("IGP"), was a sham with many of Plaintiff's grievances and complaints never lodged by DOCCS's administration such that Plaintiff never received the adverse decisions required for Plaintiff to pursue such grievances and complaints through the remaining IGP steps. *Id.* at 5-7. In further support of summary judgment, Defendants assert Plaintiff has failed to provide any evidence supporting Plaintiff's assertions that no administrative remedies were available to him, requiring granting summary judgment in Defendants' favor based on Plaintiff's failure to exhaust administrative remedies. Defendants' Summary Judgment Reply at 4-8.

The PLRA provides that no action challenging prison conditions shall be brought under § 1983 or any other federal law, by a prison inmate "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) ("§ 1997e(a)"). "The PLRA's exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). The proper exhaustion of administrative remedies "'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Hernandez v.*

*Coffey*, 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal quotation marks omitted) (italics in original)).  To satisfy the administrative grievance exhaustion requirement, an inmate in DOCCS's custody must follow DOCCS's three-step inmate grievance process ("IGP"), requiring (1) filing a grievance with the Inmate Grievance Resolution Committee ("IGRP"), (2) appealing any adverse decision by the IGRP to the correctional facility superintendent, and (3) appealing any adverse superintendent decision to the Central Office Review Committee ("CORC").  *Crenshaw v. Syed*, 686 F.Supp.2d 234, 236 (W.D.N.Y. 2015) (citing *Brownell v. Krom*, 446 F.3d 305, 309 (2d Cir. 2006)).  Generally, only after completing all three steps may an inmate seek relief under § 1983 in federal court.  *Id.* (citing *Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002)).  In New York, the three-step IGP is set forth in detail in DOCCS Directive 4040 ("Directive 4040").[13]  In the instant case, it is not disputed that Plaintiff did not exhaust his administrative remedies with regard to the conduct of which he complains.

Although the three-step administrative remedies procedure generally must be exhausted prior to commencing a § 1983 action, an inmate plaintiff's failure to exhaust may be excused under three circumstances including (1) the administrative remedies effectively are not available to the inmate; (2) the defendants' own actions inhibited the inmate's exhaustion efforts, thereby estopping the defendants from raising failure to exhaust as an affirmative defense; and (3) the inmate's failure to exhaust is justified by "special circumstances."  *Heylinger v. Gebler*, 624 Fed.Appx., 780, 782 (2d Cir. 2015)

---

[13] Schultz Declaration Exh. A.

(citing *Hemphill v. New York*, 380 F.3d 680, 688-69 (2d Cir. 2004)[14]).  Here, Plaintiff argues that the IGP administrative remedies were not available to him because the complaints he attempted to file were never accepted for filing or were never assigned administrative numbers, and because no decisions were ever rendered on the complaints at the correctional facility level, Plaintiff was not able to pursue any denial to the correctional facility's superintendent or to CORC, Plaintiff's Summary Judgment Response at 5-6, and Plaintiff's numerous letters to the superintendent and CORC were denied on the basis that Plaintiff's complaints should be handled at the correctional facility level.  Second Amended Complaint ¶ 105.  Despite Defendants' assertion that the failure to receive any response to his purported grievances did not relieve Plaintiff of his obligation to appeal to the next level, Defendants' Summary Judgment Reply at 6-7, Plaintiff maintains he did file such appeals, but the appeals were routinely denied because Plaintiff never received any written denial of the grievances.  Plaintiff's Summary Judgment Response at 5.

Inasmuch as Plaintiff's filing of other administrative grievances demonstrates Plaintiff knew how to properly file administrative grievances in accordance with the IFP, a point on which Defendants rely in support of summary judgment based on Plaintiff's failure to exhaust, Defendants' Summary Judgment Reply at 5-7, such filings also cuts the other way, *i.e.*, lending support to Plaintiff's assertions that he attempted to file 23 complaints to administratively grieve the double-bunking, yet Defendants repeatedly failed to officially file the grievances or to assign the grievances administrative numbers.

---

[14] Although the Supreme Court's decision in *Woodford*, 548 U.S. at 93, that § 1997e(a) requires "proper exhaustion" may call into question some of the three exceptions, to date, the Second Circuit has not decided the issue.  *See Heylinger*, 624 Fed.Appx. at 783, n. 3 (avoiding discussing whether all three exceptions survive *Woodford* where circumstances did not so require).

Second Amended Complaint ¶¶ 104, 117.  This is consistent with Plaintiff's assertion that after submitting the January 13, 2011 Administrative Complaint, Defendant Walawender removed Plaintiff from his cell and spoke to Plaintiff "privately in a closed room," advising Plaintiff that the Deputy of Security and Superintendent "have all your claims," but that none of Plaintiff's claims would be investigated that Plaintiff was "going to remember that none of this shit happened in our facility."  Second Amended Complaint ¶ 162.  Such allegations are consistent with Colvin's statements in the January 25, 2011 Memorandum that "Sgt. Walawender informs me that you told him that none of the issues in your complaint occurred at Five Points and that the purpose of this letter was to let staff know that you do not want to double bunk."  The statements between the January 19, 2011 Memorandum in which Walawender maintains Plaintiff retracted his assertions that he was physically assaulted by his Bunkie while housed in Five Points, and the January 19, 2011 Letter to Zenzen in which Plaintiff pleads to be placed in protective custody so as to avoid the repeated physical assaults he had endured since arriving at Five Points are at least inconsistent.  Significantly, Defendants do not deny that on November 5, 2010, Colvin signed the Protective Custody Form assigning Plaintiff to protective custody status, nor do Defendants make any attempt to explain why, despite the Protective Custody Form assigning Plaintiff to protective custody, Plaintiff was shortly thereafter removed from protective custody and returned to the general prison population where Plaintiff again was physically assaulted by other inmates.  Under these circumstances, the court finds there exists a genuine issue of material fact as to whether the IGP were in reality available to permit Plaintiff to exhaust administrative remedies prior to commencing this action.  *See Hemphill*, 380 F.3d at

688-69 (determining threats from prison guards preventing inmate plaintiff from filing grievance made administrative remedy unavailable); *Santiago v. Westchester County*, 2014 WL 20148201, at *1, 3 (S.D.N.Y. May 19, 2014) (denying defendants' motion to dismiss on grounds of failure to exhaust because factual inquiry was required where inmate plaintiff alleged he failed to exhaust administrative remedies after defendant grievance coordinator told plaintiff grieving disciplinary would be waste of time and would only make matters worse, plaintiff's attempt to file grievance with another defendant was not accepted, and mailing grievance to prison warden yielded no response).  Here, the assertions by DOCCS IGP Assistant Director Jeffrey Hale ("Hale"), that a search of the CORC computer database revealed no appeals filed by Plaintiff while in DOCCS custody pertaining to the alleged conduct at issue while Plaintiff was incarcerated at Five Points, Hale Declaration ¶¶ 1-10, as well as by Five Points IGP Supervisor Mandi Schultz ("Schultz"), that a search of Five Points' grievance records did not reveal any grievance filed by Plaintiff pertaining to the double-bunking, Schultz Declaration ¶¶ 1-2, 11-15, are consistent with Plaintiff's allegations that his grievances regarding the double-bunking were never filed, but were accumulated by Five Points' Deputy of Security and Superintendent and that none of Plaintiff's claims would be investigated.  Second Amended Complaint ¶ 162

The court thus is faced with genuine issues of disputed material facts regarding whether Plaintiff is excused from exhausting administrative grievances in accordance with the procedures set forth in Directive 4040 because such procedures were not actually available to Plaintiff.  Such disputed facts, including any credibility determinations, are not to be resolved by a jury at trial but, rather, by the court prior to

trial. *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011) (holding that because matters of administrative exhaustion are not intertwined with the merits of the underlying § 1983 claims, they are not for the jury but for the court).   Nevertheless, "PLRA exhaustion is a condition that must be satisfied *before* the courts can act on an inmate-plaintiff's action." *Id.* (italics in original) (citing *Harris v. Hegmann*, 198 F.3d 153, 158 (5th Cir. 1999)).   The court should therefore conduct an evidentiary hearing on exhaustion before impaneling a jury.   *See id.* at 308 (holding District Court did not err in denying summary judgment on exhaustion and holding evidentiary hearing on exhaustion prior to impaneling jury).

Accordingly, Defendants' motion for summary judgment should be DENIED.

## CONCLUSION

Based on the foregoing, Defendants' IFP Revocation Motion (Dkt. 57) is GRANTED; Plaintiff's Motion to Compel (Dkt. 61) is DENIED; Plaintiff's Motion to Extend Time to File (Dkt. 62) is DENIED; Defendants' Summary Judgment Motion (Dkt. 84) should be DENIED.   Plaintiff is ORDERED to pay the $ 350 filing fee no later than forty-five (45) days of any order adopting this report and recommendation.   Should Plaintiff fail to pay the filing fee within the recommended forty-five-day period, the Clerk of the Court should be directed to dismiss the Second Amended Complaint and to close the file.   Should Plaintiff pay the filing fee, an evidentiary hearing should be scheduled to resolve whether Plaintiff is excused from properly exhausting administrative remedies pursuant to the IGP set forth in DOCCS Directive 4040.

SO ORDERED as to Defendants'
IFP Revocation Motion, Plaintiff's
Motion to Compel, and Plaintiff's
Motion to Extend Time to File,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


Respectfully submitted, as to Defendants' motion
for summary judgment,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        September 28, 2016
              Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**
*Thomas v. Arn*,  474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    September 28, 2016
                  Buffalo, New York